# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION AT COLUMBUS

GERALD HAND,               :

                          Case No. 2:07-cv-846

              Petitioner,

       -vs-                       District Judge Sandra A. Beckwith
                                          Magistrate Judge Michael R. Merz

MARC HOUK, Warden,

              Respondent.          :

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This capital habeas corpus case is before the Court on Petitioner's Objections (Doc. No. 108) to the Magistrate Judge's Report and Recommendations recommending that the Petition be dismissed with prejudice ("Report," Doc. No. 101). The Warden's time to respond to those Objections expired June 30, 2011, and no response was filed. The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

### Ground One

In his First Ground for Relief, Hand argues that admission against him of Lonnie Welch's out-of-court statements to various witnesses implicating Hand in the death of three of his wives violated his Sixth Amendment Confrontation and Fourteenth Amendment Due Process rights.

**Confrontation Clause:**

The Magistrate Judge recommended denying the Confrontation Clause claim[1] because (1) the statements in question were not testimonial within the meaning of *Crawford v. Washington*, 541 U.S. 36 (2004), and (2) even if they were testimonial, Hand forfeited his Confrontation Clause objection by bringing about Welch's unavailability, to wit, by fatally shooting him in the back (Report & Recommendations, Doc. No. 101, PageID 2268-2283.)

Hand makes no objection to the conclusion that these statements were not testimonial. That conclusion alone is sufficient to dispose of the Confrontation Clause argument. Instead, Hand argues that the Report's conclusion that "Hand killed Welch to prevent him from testifying ... is wholly unsupported by the record." (Objections, Doc. No. 108, PageID 2444.) Not so. The testimony of Kenneth Grimes, Hand's cellmate, was that Hand told him he killed Welch to eliminate Welch as a witness. (Report & Recommendations, Doc. No. 101, PageID 2281, *citing* Trial Tr. Vol. 14 at 2246-2247; Vol. 16 at 3025.)

Hand relies on *Giles v. California,* 554 U.S. 353 (2008). In that case Justice Scalia distinguished between a defendant's act which merely caused the witness' unavailability and an act which was designed or intended to make the witness unavailable. Only in the latter case is there an exception to the Confrontation Clause to permit hearsay testimony relating the absent witness' statements. *Giles*, 554 U.S. at 359-364.

*Giles* does not apply to this case. The Ohio Supreme Court decided Hand's appeal in 2006.

---

[1] More completely, the Report concludes that the Ohio Supreme Court's decision that there was no Confrontation Clause violation is not contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent.

2

The Supreme Court handed *Giles* down on June 25, 2008, with no indication it was to be applied retroactively. In *Whorton v. Bockting*, 549 U. S. 406 (2007), the Supreme Court held even *Crawford v. Washington, supra,* the progenitor of *Giles*, does not apply retroactively, i.e., to cases on collateral review, because it did not announce a "watershed" rule within the meaning of *Teague v. Lane*, 489 U.S. 288 (1989).

However, even if *Giles* were to be applied retroactively, the state court findings here satisfy the *Giles* standard.  In *Giles* the state courts had held that a defendant's purpose in making a witness unavailable was irrelevant to the admission of the hearsay statements.  Here the trial judge made an express finding that Hand killed Welch "to cause his unavailability."  The Ohio Supreme Court expressly affirmed that conclusion, to wit, that it was Hand's purpose in killing Welch to make him unavailable to testify.

In the heading of this objection, Hand suggests the State had to prove his purpose in killing Welch by clear and convincing evidence.  He cites no law for this implicit proposition and the Ohio Supreme Court noted that:

> [T]he majority of United States Courts of Appeals applying the federal rule have followed the preponderance-of-the-evidence standard in ruling on preliminary determinations of admissibility under Fed.R.Evid. 804(b)(6). *See Cotto v. Herbert* (C.A.2, 2003), 331 F.3d 217, 235; *United States v. Scott* (C.A.7, 2002), 284 F.3d 758, 762; *United States v. Cherry* (C.A.10, 2000), 217 F.3d 811, 820; *United States v. Zlatogur* (C.A.11, 2001), 271 F.3d 1025, 1028; see, also, *Steele v. Taylor* (C.A.6, 1982), 684 F.2d 1193, 1202 (preponderance standard in making preliminary findings in waiver-by-misconduct cases).

*State v. Hand,* 107 Ohio St. 3d 378, 392, 840 N.E. 2d 151, 172 (2006).


**Due Process:**

3

Hand objects that his Due Process claims about Welch's out-of-court statements should have been reviewed by the Magistrate Judge *de novo* because they were not adjudicated on the merits by the Ohio Supreme Court (Objections, Doc. No. 108, PageID 2445).

Hand's Due Process claim was not "fairly presented" to the Ohio Supreme Court so as to obtain a merits ruling.  In his five pages of argument on the reliability of the statements, his sole citation of authority for any "due process" requirement is a quotation from the 2001 Staff Notes to the adoption of Ohio R. Evid. 804(b)(6): "This is probably also a due process requirement" in a cross-reference to Rule 403.

To preserve a federal constitutional claim for presentation in habeas corpus, the  claim must be "fairly presented" to the state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790 (6th Cir. 1991).  Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue.  *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter*, 450 F.3d at 236; *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).  A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material

4

that will alert it to the presence of such a claim.  *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

In the Ohio Supreme Court, Hand did little more than make a talismanic reference to due process because an Evidence Rule Staff Note is not a source of controlling legal authority, state or federal.[2]  A federal constitutional claim which has not been fairly presented is procedurally defaulted.  Alternatively, if the Court finds the Due Process claim was fairly presented to the Ohio Supreme Court, that Court should be held to have resolved the claim on the merits.  The key Due Process question as Hand presents it here is whether these statements are sufficiently reliable to be admissible.  The Ohio Supreme Court clearly recognized the reliability argument as separate from the Confrontation Clause argument and considered it at length:

> Finally, Hand argues that the trial court erred in admitting Welch's statements because they were not reliable. Hand claims that the witnesses were not credible because they were Welch's friends, family members, and a cellmate. Moreover, Hand contends that Welch's friends and family members were angry at him for killing Welch.
>
> Following the evidentiary hearings and before admitting Welch's statements under Evid.R. 804(B)(6), the trial court found that each witness was credible. The decision whether to admit these hearsay statements was within the trial court's discretion. See State v. Sage (1987), 31 Ohio St.3d 173, 31 OBR 375, 510 N.E.2d 343, paragraph two of the syllabus (the admission of relevant evidence rests within the sound discretion of the trial court); cf. State v. Landrum (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710 ("The determination of whether corroborating circumstances are sufficient to admit statements against penal interest, as a hearsay exception, generally rests within the discretion of the trial court").
>
> No evidence supports Hand's allegations that Welch's friends and family members were not telling the truth, and their bias could have been explored on cross-examination. Indeed, courts generally hold that "where a declarant makes a statement to someone with whom he

---

[2] Besides which the Staff Note only says that due process is "probably" implicated.

5

> has a close personal relationship, such as a spouse, child, or friend,
> * * * that * * * relationship is a corroborating circumstance
> supporting the statement's trustworthiness." (Emphasis sic.) State v.
> Yarbrough, 95 Ohio St.3d 227, 2002 Ohio 2126, 767 N.E.2d 216,
> P53; see, also, United States v. Tocco (C.A.6, 2000), 200 F.3d 401,
> 416 (declarant's statements to his son in confidence considered
> trustworthy); Latine v. Mann (C.A.2, 1994), 25 F.3d 1162,
> 1166-1167 (reasoning that statements made to a perceived ally rather
> than to a police officer during an interrogation are trustworthy).
> Moreover, the testimony of Welch's friends and family members was
> corroborated by Jordan, Welch's cellmate, and Grimes, who testified
> that Hand admitted hiring Welch to kill Jill.

*Hand*, 107 Ohio St. 3d at 392-393.

A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. §2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law. In *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770 (2011), the Supreme Court held:

> By its terms § 2254(d) bars relitigation of any claim "adjudicated on
> the merits" in state court, subject only to the exceptions in §§
> 2254(d)(1) and (d)(2). There is no text in the statute requiring a
> statement of reasons. The statute refers only to a "decision," which
> resulted from an "adjudication." As every Court of Appeals to
> consider the issue has recognized, determining whether a state court's
> decision resulted from an unreasonable legal or factual conclusion
> does not require that there be an opinion from the state court
> explaining the state court's reasoning. *See Chadwick v. Janecka*, 312
> F.3d 597, 605-606 (CA3 2002); *Wright v. Secretary for Dept. of
> Corrections*, 278 F.3d 1245, 1253-1254 (CA11 2002); *Sellan v.
> Kuhlman*, 261 F.3d 303, 311-312 (CA2 2001); *Bell v. Jarvis*, 236
> F.3d 149, 158-162 (CA4 2000) (en banc); *Harris v. Stovall,* 212 F.3d
> 940, 943, n. 1 (CA6 2000); *Aycox v. Lytle,* 196 F.3d 1174, 1177-1178
> (CA10 1999); *James v. Bowersox*, 187 F.3d 866, 869 (CA8 1999).
> And as this Court has observed, a state court need not cite or even be
> aware of our cases under § 2254(d). *Early v. Packer*, 537 U.S. 3, 8,
> 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (per curiam). Where a state
> court's decision is unaccompanied by an explanation, the habeas
> petitioner's burden still must be met by showing there was no
> reasonable basis for the state court to deny relief. This is so whether

6

> or not the state court reveals which of the elements in a multipart
> claim it found insufficient, for § 2254(d) applies when a "claim," not
> a component of one, has been adjudicated.

131 S. Ct. at 784.  "This Court now holds and reconfirms that §2254(d) does not require a state court to give reasons before its decisions can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785. The reliability issue the Ohio Supreme Court had to decide here involves the same considerations which should be given to reliability of hearsay when considering it from a constitutional perspective.  In his Objections, Petitioner cites no United States Supreme Court precedent which is contravened or unreasonably applied by this decision of the Ohio Supreme Court.

Finally, if this Court were to engage in *de novo* review, it would find the statements sufficiently reliable for admission.  In arguing that the statements are unreliable, Hand argues that all of the witnesses who repeated these statements of Welch were his friends and family who had a motive to testify against Hand because he had killed Welch.  He further notes that they had heard these statements over a number of years and never went to the police.  Those facts being true, it contributes to their reliability that there were so many of them, that they were people to whom someone like Welch might have made such admissions, and, knowing that he was a murderer, their reluctance to inform on him is quite understandable.

Petitioner's only citation of authority in this section of the Objections is to *Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2007), a case involving the unreliability of statistical inferences drawn from bite-mark testimony.  Petitioner offers no litmus-test precedent for measuring reliability in these circumstances for constitutional purposes.  If this Court reaches a *de novo* evaluation of Hand's Due Process claim, it should conclude that this hearsay was sufficiently reliable to meet constitutional standards.

7

In sum, Ground One for Relief is without merit.

## Ground Two

In his Second Ground for Relief, Hand contends the trial court unconstitutionally admitted prejudicial character and other acts evidence. The Report recommends dismissing this claim as procedurally defaulted because it was not fairly presented to the Ohio Supreme Court as a federal constitutional claim (Doc. No. 101, PageID 2283-2291). Hand objects that he did properly "federalize" his claim, citing his direct appeal brief (ROW, Apx. Vol. 6 at 279). The argument on Proposition of Law 2 on this subject is seven pages long. *Id.* at 279-285. In that entire space, there is no citation to any federal authority on the basic claim except the conclusory contention that admitting this evidence "denied Gerald Hand his rights to a fair trial, due process and a reliable determination of his guilt and sentence as guaranteed by the United States Constitution, Amends. V, VI, VIII, and XIV ..." *Id.* at 279. Having made that contention, Hand argued it entirely in terms of state authority. As noted above under Ground One, mere recitation of talismanic phrase such as "fair trial" or "due process" is not sufficient.

But Hand argues in the Objections that this is sufficient, citing the holding in *Carter v. Bell*, that "[a] petitioner 'fairly presents' his claim to the state courts by citing a provision of the Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns" 218 F.3d 581, 607 (6th Cir. 2000), *quoting Hannah v. Conley*, 49 F.3d 1193, 1196 (6th Cir. 1995), and *citing Levine v. Torvik,* 986 F.2d 1506 (6th Cir. 1993)). In *Carter*, the Sixth Circuit found sufficient reference to federal authority. "We believe that

8

Carter has met these requirements by asserting in his state post-conviction petitions that the statute failed to narrow the class of persons eligible for the death penalty in violation of his Eighth Amendment rights." 218 F.3d at 607. The *Carter* court did not provide extensive analysis of what is needed to "federalize" a claim and there was no need to in light of the petitioner's specifically adverting to the Eighth Amendment in his state court arguments. Here the argument in the Ohio Supreme Court was a sweeping reference to fair trial and due process, coupled with citation of only state case law.

It could be sufficient "federalization" if the state court cases cited were cases in which the state courts "employed constitutional analysis in similar fact patterns." *Carter*, 218 F.3d at 607. When we examine the cases cited by Hand to the Ohio Supreme Court, we find:

- *State v. Jamison*, 49 Ohio St. 3d 182, 552 N.E. 2d 180 (1990)  - other acts evidence claim decided entirely in terms of Ohio R. Evid. 404(B) and Ohio Revised Code § 2945.59.

- *State v. Mann*, 19 Ohio St. 34, 482 N.E. 2d 592 (1985) - other acts evidence claim decided entirely in terms of Ohio R. Evid. 404(B).

- *State v. Curry*, 43 Ohio St. 2d 66, 330 N.E. 2d 720 (1975) - other acts evidence claim decided entirely in terms of Ohio Revised Code § 2945.59. The Ohio Rules of Evidence were not adopted until July 1, 1980.

- *State v. Burson*, 38 Ohio St. 2d 157, 311 N.e. 2d 526 (1974) - other acts evidence claim decided entirely in terms of Ohio Revised Code § 2945.59.

- *State v. Hector*, 19 Ohio St. 2d 167, 249 N.E. 2d 912 (1969) - other acts evidence claim

decided entirely in terms of Ohio Revised Code § 2945.59.[3]

- *State v. Broom*, 40 Ohio St. 3d 331, 533 N.E. 2d 277 (1988) - other acts evidence claim decided entirely in terms of Ohio R. Evid. 404(B) and Ohio Revised Code § 2945.59.

- *State v. Shedrick*, 61 Ohio St. 3d 331, 574 N.E. 2d 1065 (1991) - other acts evidence claim decided entirely in terms of Ohio R. Evid. 404(B) and Ohio Revised Code § 2945.59.

- *State v. Thompson*, 66 Ohio St. 2d 496, 422 N.E. 2d 855 (1981) -  other acts evidence claim decided entirely in terms of Ohio R. Evid. 404(B) and Ohio Revised Code § 2945.59.

By examining these citations, it can be seen that Hand did not argue this portion of his case to the Ohio Supreme Court by relying on state court decisions which "employ constitutional analysis."  Indeed, his argument as well as his citations were entirely in terms of violations of Ohio evidence law.  This claim was not fairly presented to the Ohio courts as a federal constitutional claim.

Alternatively, if the Court concludes this claim was properly federalized, then the question this Court must answer is whether the Ohio Supreme Court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent.  When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Brown v. Payton,* 544 U.S. 133, 134 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362 (2000).  In neither his

---

[3] *Mann, Curry, Burson,* and *Hector* are all part of a string citation at page 19 of the Brief (Apx. Vol. 6 at 280).

10

Petition (Doc. No. 11), his post-hearing Brief (Doc. No. 90), nor his Objections (Doc. No. 108) does Petitioner cite any such precedent of the United States Supreme Court. Indeed, in his Petition, Hand cites Ohio R. Evid. 404(B), Ohio Revised Code § 2945.59, and *State v. Jamison, supra.* In sum, Hand has not shown entitlement to relief on the merits, even if the Court reaches the merits.

Also in the alternative, this Second Ground for Relief is procedurally defaulted on a basis not cited in the original Report and Recommendations. As the Ohio Supreme Court opinion shows, on many of the claims made in this Ground for Relief, defense counsel failed to make a contemporaneous objection and the Ohio Supreme Court reviewed only for plain error. A state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle,* 271 F. 3d 239 (6th Cir. 2001), *citing Seymour v. Walker,* 224 F. 3d 542, 557 (6th Cir. 2000)(plain error review does not constitute a waiver of procedural default); *accord, Mason v. Mitchell,* 320 F.3d 604 (6th Cir. 2003). However, the opinion of a state court on plain error review is still entitled to AEDPA deference if the federal court reaches the merits despite the procedural default. *Fleming v. Metrish*, 556 F.3d 520 (6th Cir. 2009).

On all three of these bases, it is again respectfully recommended that the Second Ground for Relief be dismissed.

**Ground Three**

11

Hand's Third Ground for Relief claims a failure to disclose exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  The Report recommends overruling the Warden's procedural default *res judicata* defense to this claim and considering it on the merits.  However, it also recommended rejecting the claim because – despite being granted discovery in this habeas proceeding including the right to depose Detective Graul from the Columbus Police Department who allegedly had the suppressed information – Hand never produced any evidence that there was suppressed information.  As noted in the Report, Hand either chose not to depose Graul or never filed his deposition here (Doc. No. 101, PageID 2294).

Hand alleges in his Objections that he "has articulated the specific exculpatory evidence withheld: the contents of the Columbus Police Department's 2001 investigation into the deaths of Hand's first two wives."  (Objections, Doc. No. 108, PageID 2448).  But merely describing a file does not prove its contents or that they would have been exculpatory.  There is no proof in the record before this Court of the contents of that file or why they would have been exculpatory.  Ground Three should be dismissed for the same reasons set forth in the original Report.


**Ground Four**


In his Fourth Ground for Relief, Hand asserts ineffective assistance of trial counsel in the guilt phase of his trial in several respects.  These were divided into sub-claims for analysis and that structure is maintained here.

**Sub-claim A: Failure to Object to Testimony which was
Protected by Attorney-Client Privilege**

12

In sub-claim A, Hand asserts his trial attorney was ineffective for failure to prevent his bankruptcy attorney from breaching attorney-client privilege when he testified at the trial.

The Report concluded this sub-claim was procedurally defaulted because it was not raised on direct appeal.  To excuse that default, Hand claimed ineffective assistance of appellate counsel. But ineffective assistance of counsel can serve as excusing cause only if the ineffectiveness claim has not itself been defaulted. *Edwards v. Carpenter,* 529 U.S. 446 (2000).  The Report concluded the ineffective-assistance-of-appellate-counsel-as-excusing-cause claim had itself been defaulted by delay in presenting it to the Ohio courts (Doc. No. 108, PageID 2296-2298).

The Objections assert:

> [T]he Magistrate [Judge] misinterprets the basis upon which Hand asserts that he had good cause for the default. ... Hand was unable to timely pursue his appellate ineffectiveness claim due to the fact that his post-conviction counsel and direct appeal attorneys were colleagues in the same law office who worked at points in collaboration on his case (ROW Apx. Vol. IX, pp. 59-61); see also *State v. Lentz*, 639 N.E.2d 784, 786 (Ohio 1994) (discussing circumstances under which parallel representation by attorneys from the Ohio Public Defender's Office constitutes a conflict of interests); Answer, pp. 17, 19, 21. This satisfies the cause requirement for excusing the fact that Hand's appellate ineffectiveness claim – itself cause for the failure to raise the bankruptcy attorney issue on direct appeal. *See, e.g., Combs v. Coyle*, 205 F.3d 269, 276 (6th Cir. 2000) ("The State acknowledges that counsel cannot be expected to raise his own ineffectiveness."); *Jamison v. Collins*, 100 F. Supp.2d 521, 572 (S.D. Ohio 1998) (finding cause for procedural default where petitioner was represented by same counsel at trial and on appeal who could not have raised his own ineffectiveness in state court).

(Objections, Doc. No. 108, PageID 2450-2451.)

Hand presented this argument – delay excused by conflict of interest between direct appeal counsel and post-conviction counsel – to the Ohio Supreme Court (Motion to Reopen Appeal, ROW

Apx. 9, pp. 47-58).  The Ohio Supreme Court summarily rejected that excuse and denied the Motion because it was filed after the 90-day limit on filing such motions in S. Ct. Prac. R. XI (6)(A)[4]  *Id.* at 207.  The Sixth Circuit has held that, at least as of June 2006, the 90-day time limit was firmly established and regularly followed.  *Hoffner v. Bradshaw*, 622 F.3d 487, 504-505 (6th Cir. 2010). The Ohio Supreme Court was under no constitutional obligation to accept Hand's excuse for the delay, particularly since he was not constitutionally entitled to the assistance of counsel on his Motion to Reopen. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600 (1974).  Since he cannot rely on ineffective assistance of appellate counsel to excuse his default in presenting this claim to the Ohio courts, Sub-claim A is procedurally defaulted.


### Sub-claim B: Failure to Adequately Question Prospective Jurors Regarding their Awareness of Pretrial Publicity

No further analysis is needed on this sub-claim beyond what is in the original Report.


### Sub-claim C: Failure to Move for a Change of Venue

No further analysis is needed on this sub-claim beyond what is in the original Report.


### Sub-claim D: Failure to Act upon and Utilize Hand's Report of an Escape Attempt at the Delaware County Jail

---

[4] The Ohio Supreme Court decided the direct appeal on January 18, 2006.  *State v. Hand*, 107 Ohio St. 3d 378, 840 N.E. 2d 151 (2006).  The Motion to Reopen was filed September 24, 2007, more than eighteen months later.  (Motion, ROW Apx. 9, p. 47.)

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim E: Failure to Exclude Prospective Jurors Who Were
### Biased Against the Defense

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim F: Failure to Object to the Admissibility of
### Co-conspirator's Statements

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim G: Failure to Object to Other Bad Acts
### Evidence and Argument

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim H: Failure to Present Evidence of Self-defense
### at the Hearsay Hearing

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim I: Failure to Call Phillip Anthony as a Defense Witness

No further analysis is needed on this sub-claim beyond what is in the original Report.

**Sub-claim J[5]: Failure to Request Jury Instructions**

In Sub-claim J, Hand asserts his counsel were ineffective for failure to request limiting instructions on other acts evidence and defining "course of conduct" for one of the death penalty specifications.  The Report concluded this claim was procedurally defaulted for failure to fairly present it as a federal claim to the state courts.

Hand objects that an ineffective assistance of trial counsel claim is inherently a constitutional claim.  The Magistrate Judge agrees; the Report is in error in concluding this sub-claim was not fairly presented as a federal claim.

Upon reconsideration of this claim on the merits, however, the Court finds that Hand has failed to show that the Ohio Supreme Court's decision on this claim is contrary to or an unreasonable application of the relevant United States Supreme Court precedent, to wit, *Strickland v. Washington*, 466 U.S. 668 (1984), and *Wiggins v. Smith*, 539 U.S. 510 (2003).  This sub-claim should therefore be rejected on the merits.

**Sub-claim K: Cumulative Effect of Trial Attorney Error**

In his last sub-claim of ineffective assistance of trial counsel, Hand asserts that the cumulative effect of his trial attorneys' errors was prejudicial.  The Report rejected this claim both as procedurally defaulted and on the merits.  Hand objects to the procedural default analysis and cites to *State v. Hand*, 2006 WL 1063758 at *7 (Ohio App. 5th Dist. Apr. 21, 2006).  This is the Fifth

_____

[5] Mislabeled Subclaim H at Report, Doc. No. 101, PageID 2342.

16

District's decision on appeal from denial of post-conviction relief and deals with a cumulative error claim relating to all the asserted trial court errors, not just ineffective assistance of trial counsel.  In any event, the disposition of this claim by the Ohio Court of Appeals is neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.  *See Lorraine v. Coyle,* 291 F.3d 416, 477 (6th Cir. 2002), cited in Report at PageID 2344.

## Ground Five

In his Fifth Ground for Relief, Hand claims he was denied effective assistance of counsel during the mitigation phase of trial. As with Ground Four, there are a number of sub-claims.

## Sub-claim A: Failure to Present Expert Psychological Testimony in Mitigation

In sub-claim A, Hand asserts his trial attorneys were ineffective for failing to elicit from forensic psychologist Daniel Davis the testimony he was prepared to give that

> (1) Mr. Hand was truthful, open, and cooperative; (2) his test results did not reveal characteristics similar to those of an individual with an anti-social personality disorder; and (3) his psychiatric profile was not consistent with the typical traits of a "cold calculating antisocial personality."

(Davis Affidavit, Exhibit 8 to Post-Conviction Petition, ROW Apx Vol. 10, at 354, ¶ 6; the purported quotation is a paraphrase of ¶ 6.)  Instead they limited his testimony to a prediction that Hand would adjust well to life in prison.

This claim was initially raised as the fourth ground for relief in post-conviction and rejected by the Delaware County Common Pleas Court on the basis of Ohio's criminal *res judicata* doctrine.

The Fifth District Court of Appeals affirmed on that basis and also alternatively found no merit in this ground for relief. *State v. Hand*, 2006 WL 1063758 at *4-5.

The Report recommends rejecting this sub-claim on the basis of procedural default. (Report, Doc. No. 101, PageID 2348.) In the Objections, Hand contends that the state court's reliance on *res judicata* was in error because the post-conviction petition relied on material outside the appellate record, citing particularly Dr. Davis' Affidavit. It is correct that Dr. Davis' Affidavit was not in the direct appeal record and it therefore may have been error under Ohio law to reject this claim on a *res judicata* basis. The Fifth District Court of Appeals was willing to assume *arguendo* that *res judicata* did not apply and ruled alternatively on the merits that counsel were not ineffective in failing to elicit this testimony. *Hand*, 2006 WL 1063758 at *4-5.

That conclusion is not an unreasonable application of *Strickland*. It is unlikely in the extreme that a jury which had just convicted a man of conspiring in the murder of three of his wives for financial gain and for the murder of his co-conspirator would be likely to put much credence in psychological test results which indicate the man is not "cunning" nor antisocial. When a federal habeas court reviews a state court merit decision on an ineffective assistance of trial counsel claim, the review is doubly deferential, first to the trial attorney under *Strickland* and then to the state court under § 2254(d)(1). *Harrington,* 131 S. Ct. at 788. Given that standard, this sub-claim should be rejected on the merits. The lengthy discussion of *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1995) at this point in the Objections is a red herring – the performance of counsel here is nothing like the deficient performance detailed in *Glenn*.

### Sub-claim B: Failure to Investigate and Present Mitigation Through Family and Friends Regarding Hand's Abysmal

**Childhood and Dysfunctional Family Background**

No further analysis is needed on this sub-claim beyond what is in the original Report.


**Sub-claim C: Failure to Present Pharmacological and
Lay Witness Testimony to Explain Hand's Demeanor
During His Guilt-Phase Testimony**

In sub-claim C, Hand asserts his trial counsel were ineffective in failing to present expert pharmacological and lay witness testimony to explain his demeanor during his guilt-phase testimony. This claim was presented for the first time in Hand's Petition for post-conviction relief and was rejected by the state trial and appellate courts on *res judicata* grounds. The Report concluded this was an adequate and independent state ground of decision and recommended dismissal on that basis (Report, Doc. No. 101, PageID 2352-2353). The Objections assert the state courts and the Report are in error in this respect because the claim necessarily relied on evidence outside the direct appeal record.

The state appellate court opinion on this sub-claim reached the merits in the alternative and found, in summary fashion, that failure to offer this testimony was not ineffective assistance of trial counsel. *State v. Hand,* 2006 WL 1063758 ¶ 35 (Ohio App. 5th Dist. Apr. 21, 2006). Assuming that *res judicata* does not apply, the question is whether the alternative decision on the merits is an objectively unreasonable application of *Strickland*.

In the Petition for Post-Conviction Relief, there is no reference to "expert pharmacological testimony." Instead, Hand referred to failure to have Dr. Davis, the psychologist, explain how Hand's "inability to express himself was due to anxiety and a long-term social ineptness." (Petition,

¶ 76, ROW Apx. Vol. 10 at 102.) The notion that this testimony would somehow have bolstered Hand's credibility enough to get the jury to accept his defense is speculative at best. The lay testimony would have been from Ben Miller and Jack Copley. *Id.* ¶¶ 73 & 74. Both were prepared to testify that they had known Hand for many years and he cannot express himself well.[6] Of course, the jury had already seen that Hand could not express himself well. The notion that a lay witness could have been called to testify to an opinion that the reason Hand did not express himself well on the witness stand is because he never did so is very tenuous and its impact on the jury speculative. Given the double deference which this Court must apply in this situation, *Harrington, supra*, this sub-claim is without merit.

### Sub-claim D: Failure to Present Testimony
### Regarding Hand's Third Wife

In sub-claim D, Hand argues he received ineffective assistance of trial counsel because his counsel did not present evidence to show that his third wife, Glenna, was analcoholic and abusive and that he divorced her. Hand's theory is that he was tried for murdering three of his four wives, but since Glenna was the worst and he didn't murder her, that undercut the claim he murdered the other three.

The Affidavits offered in post-conviction from Sally Underwood and Robert Hand which proffer the testimony they would have given do not persuade the Court that it was ineffective assistance of trial counsel to fail to present them live. Hand himself testified extensively about his

---

[6] Copley's Affidavit also avers Hand told him he was crying himself to sleep at night after the murders. This would obviously have been inadmissible hearsay.

third wife and described her in glowing terms. Thus the testimony which it was supposedly ineffective assistance of trial counsel to fail to offer would have undercut Hand's own testimony. There is no merit to this sub-claim.

### Sub-claim E: Failure to Investigate and Present an Effective Mitigation Strategy and Give a Penalty-Phase Closing Argument

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim F: Failure to Object to Readmission of All the Guilt Phase Evidence

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Sub-claim G: Cumulative Ineffectiveness in Mitigation

No further analysis is needed on this sub-claim beyond what is in the original Report.

### Ground Six

In Ground Six Hand contends the trial court failed to conduct an adequate colloquy with prospective jurors to determine whether they were biased by pretrial publicity. This claim was not

presented on direct appeal, but pled for the first time in the Petition for Post-Conviction Relief.  Both

trial and appellate state courts found it was barred by *res judicata* and the Report recommends it be

dismissed on that basis (Report and Recommendations, Doc. No. 101, PageID 2368-2371).

Petitioner claims *res judicata* is not applicable because he presented newspaper articles from

the weeks and months preceding the trial as attachments to the Post-Conviction Petition.  The Court

of Appeals acknowledged that these materials were attached to the Petition and that they had not

been part of the direct appeal record.  It held:

> Upon review, appellant was not precluded from directly appealing the
> issue, as the issue could be determined by reviewing the voir dire
> transcript. The record clearly demonstrates the trial court discussed
> the pretrial publicity during voir dire and discussed the same with the
> jurors. Appellant's attachment of exhibits demonstrating pre-trial
> publicity to the post-conviction relief petition, though admittedly
> outside the original trial record, merely supplements appellant's
> argument which was capable of review on direct appeal on the then
> extant record. Accordingly, we agree with the trial court res judicata
> applies.

*State v. Hand*, 2006 WL 1063758 at *3-4 (Ohio App. 5th Dist. Apr. 21, 2006).  In other words, a

defendant cannot revive a claim forfeited on direct appeal by attaching merely supplementary

materials to his post-conviction petition.  Petitioner has not shown by any citation of authority in the

Objections that this ruling is at odds with Ohio's criminal *res judicata* doctrine in general.  It is

therefore again respectfully recommended that this Ground for Relief be dismissed with prejudice

as procedurally defaulted.


**Ground Seven**


In Ground Seven, Hand asserts that joinder of the escape charge with the aggravated murder

charges deprived him of due process.  The Report concluded this claim had not been fairly presented

to the Ohio Supreme Court as a federal constitutional claim and was therefore procedurally defaulted

(Report and Recommendations, Doc. No. 101, PageID 2371-2373).

Hand objects to this conclusion, pointing to ways in which he allegedly made constitutional

arguments in the state courts.  As noted above, to preserve a federal constitutional claim for

presentation in habeas corpus, the  claim must be "fairly presented" to the state courts in a way

which provides them with an opportunity to remedy the asserted constitutional violation, including

presenting both the legal and factual basis of the claim.  *Williams v. Anderson,* 460 F.3d 789, 806

(6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506 (6th Cir. 1993); *Riggins v. McMackin,* 935 F.2d 790

(6th Cir. 1991).  Merely using talismanic constitutional phrases like "fair trial" or "due process of

law" does not constitute raising a federal constitutional issue.  *Slaughter v. Parker,* 450 F.3d 224,

236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322 at 326 (6th Cir. 1987); *McMeans v. Brigano,* 228

F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In his Brief on direct appeal, Hand argued explicitly that the joinder of these charges violated

Ohio R. Crim. P. 13 and Ohio Revised Code § 2941.04 (Brief, ROW Apx. Vol. 6 at 286).  On the

second and third pages of the argument, Hand cites six cases relied on by the trial court in granting

consolidation and argues distinctions from the case in suit.  *Id.*  at 287-288.  On the fourth and fifth

pages, Hand cites two Ohio cases on prejudice.  *Id.*  at 289-290.  He then argues three Ohio cases

on "other acts" evidence.  *Id.*  at 291.  Then he attempts to distinguish seven Ohio cases where the

Ohio Supreme Court upheld joinder.  *Id.*  at 291-292.

In contrast to these eight pages of argument of Ohio law, there are the following references:

•       In the formulation of Proposition of Law No. 3, he asserts in conclusory fashion that the

23

joinder was "in violation of his constitutional protections." *Id.* at 286.

- "The needs for judicial economy cannot overwrite [sic] the constitutional protections of due process and the requirements for a fair and reliable sentence." *Id.* at 288.

- "Therefore, joinder was unconstitutional and the convictions and sentences for all charges must be reversed. U.S. Const. amends. V, VI, VIII, IX, XIV; Ohio Const. art. I §§ 1, 2, 5, 9, 10, 16, 20." *Id.* at 293, the last sentence on this Proposition of Law.

In the body of the argument, Hand cites only one federal case, *United States v. Blue Thunder*, 604 F.2d 550 (8th Cir. 1919), not in support of his argument, but as a case relied on by the trial court which he argued was distinguishable.

Hand argues in the Objections that two of the Ohio cases he cited relied on constitutional analysis, to wit, *State v. LaMar*, 95 Ohio St. 3d 181, 767 N.E. 2d 166 (2002), and *State v. Roberts*, 62 Ohio St. 2d 170, 405 N.E. 2d 247 (1980)(Doc. No. 108, PageID 2475). In *LaMar*, the Ohio Supreme Court resolved LaMar's prejudicial joinder claim regarding his murderous participation in several of the deaths which occurred during the Lucasville prison riot under Ohio R. Crim. P. 8(A). In *Roberts*, the Ohio Supreme Court resolved a claim of prejudice under Ohio R. Crim. P. 14 where the defendant wanted to testify on one of the charges but not others, not Hand's position here. Both cases involve citation to some federal cases, but no express consideration of federal constitutional questions apart from the Ohio Rules of Criminal Procedure. Certainly in deciding the joinder issue in this case, the Ohio Supreme Court adverted only to state precedent.

In sum, Hand did nothing to make a substantial constitutional argument in the state courts and thus should be held to have procedurally defaulted this Seventh Ground for Relief.

However, as an alternative approach to analyzing this claim, the Court could accept Hand's

24

argument that his Proposition of Law No. 3 really did present this constitutional claim to the Ohio Supreme Court and that Court decided it. Then the question before this Court would be whether that decision was an objectively unreasonable application of clearly established United States Supreme Court precedent on prejudicial joinder. In the Objections, Hand does not suggest what that precedent would be. In his Petition, Hand cites *United States v. Lane*, 474 U.S. 438 (1986)(Doc. No. 11, ¶ 112). There are no Supreme Court citations in his Reply on this Ground for Relief (See Doc. No. 32, PageID 586-590). *Lane* is concerned with misjoinder of persons, not joint trial of different charges against the same person. Hand has failed to show how the Ohio Supreme Court decision unreasonably applied *Lane* or any other United States Supreme Court precedent. Therefore Ground Seven should be dismissed with prejudice.

## Ground Eight

In Ground Eight Hand contends there was insufficient evidence to convict him of escape. The Ohio Supreme Court decided this constitutional claim on the merits, applying the relevant United States Supreme Court precedent, *Jackson v. Virginia*, 443 U.S. 307 (1979). *Hand*, 107 Ohio St. 3d at 402-403.

No further analysis is needed on this Ground for Relief beyond what is in the original Report.

## Ground Nine

25

In his Ninth Ground for Relief, Hand challenges the trial court's jury instructions.

### Sub-claim A: Error to Instruct on Complicity When State's Theory was that Hand was the Principal Offender

In Proposition of Law No. 5 in the Ohio Supreme Court, Hand argued it was error to permit the State to amend the bill of particulars to allege complicity as an alternative to the principal offender claim and then also error to instruct on complicity.  The Ohio Supreme Court dealt with this principally as a claim of lack of notice of the charges and held that because Ohio law permits complicity to be charged either in terms of Ohio Revised Code § 2923.03(F) or in principal offender terms, the statute itself gave adequate notice.  The Report concluded there was no unreasonable application of clearly established federal law because the Sixth Circuit had upheld the Ohio practice. (Report and Recommendations, Doc. No. 101, PageID 2384, *citing Hill v. Perini*, 788 F.2d 406, 406-07 (6th Cir.), *cert. denied*, 469 U.S. 934 (1984).)

Hand objects that there is U.S. Supreme Court authority to the contrary.  First he cites *Ex Parte Bain*, 121 U.S. 1(1887), but *Bain*[7] interprets the Fifth Amendment right to grand jury indictment which does not apply to the States.  *Hurtado v. California*, 110 U.S. 516 (1884); *Branzburg v. Hayes,*408 U.S. 665, 687-88 n. 25 (1972) *Gerstein v. Pugh*, 420 U.S. 103 (1975).  Next Hand cites *Stirone v. United States*, 361 U.S. 212 (1960), but that case was also about the Fifth Amendment right to grand jury indictment, which does not apply here.

As opposed to the right to be indicted by a grand jury, which does not apply to the States,

---

[7] Insofar as it held that a defective indictment deprives the trial court of jurisdiction, *Bain* was expressly overruled by *United States v. Cotton*, 535 U.S. 625 (2002).

the Due Process Clause of the Fourteenth Amendment entitles a criminal defendant to sufficient notice of what the charges are against him so that he can defend himself. *See Valentine v. Konteh,* 395 F. 3d 626, 631 (6th Cir. 2005). The Ohio Supreme Court held that Hand had received adequate notice by virtue of the statute, Ohio Revised Code § 2923.03. *Hill v. Perini, supra,* addresses that precise point and finds the Ohio practice constitutionally acceptable. This sub-claim is therefore without merit.

### Sub-claim B: Error in Failing to Narrow Appropriately the Course-of-Conduct Specification

In addition to the analysis in the original Report, the Magistrate Judge notes that the Ohio Supreme Court conducted only plain error review on this claim, thereby enforcing Ohio's contemporaneous objection rule. That rule is an adequate and independent state ground for decision. *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 131 S. Ct. 185 (2010). Therefore as well as being without merit, this sub-claim is procedurally defaulted.

### Sub-claim C: Error in Instructions about Guilt Phase Exhibits in the Penalty Phase

In sub-claim C, Hand asserts the trial court erred in its instructions about guilt phase exhibits when it gave the penalty phase instructions. The Report recommends dismissing this claim as procedurally defaulted: it was never raised in the state courts as a free-standing claim. In the Objections, Hand claims excusing cause from ineffective assistance of appellate counsel, but as noted above, that claim must be presented in the first instance to the state courts and here Hand failed to do so in a timely manner. This sub-claim is procedurally defaulted.

### Sub-claim D: Failure to Appropriately Instruct on Reasonable Doubt

No further analysis is needed on this sub-claim beyond what is given in the Report.

### Ground Ten

In his Tenth Ground for Relief, Hand contends the jury failed to properly weigh the evidence before returning a recommended death sentence. No further analysis is needed on this Ground for Relief beyond what is given in the Report.

### Ground Eleven

In his Eleventh Ground for Relief, Hand contends he received ineffective assistance of appellate counsel in six respects. This entire Ground for Relief is procedurally defaulted for the reasons given above and in the Report as to the timeliness of Hand's Motion to Reopen his direct

28

appeal.

## Ground Twelve

Hand's objection on this Ground for Relief is expressly made to preserve the claim for the record, presumably in the event the Sixth Circuit changes the law on this question. While making the objection for that purpose is completely appropriate, it does not require further analysis.

## Ground Thirteen

In his Thirteenth Ground for Relief, Hand contends exclusion of residual doubt as a mitigating factor in sentencing is unconstitutional. No further analysis is needed on this Ground for Relief.

## Ground Fourteen

In his Fourteenth Ground for Relief, Hand contends Ohio's method of execution by lethal injection is unconstitutional. No further analysis is needed on this Ground for Relief.

## Ground Fifteen

No further analysis is needed on this Ground for Relief beyond what is contained in the original Report.

## Conclusion

Having reconsidered the case on Petitioner's Objections, the Magistrate Judge again concludes that the Petition for Writ of Habeas Corpus should be dismissed with prejudice.

July 11, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).