UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Gerald Hand, | Case No. 2:07-cv-846 |
| Petitioner, | |
| vs. | |
| Marc Houk, Warden, | |
| Respondent. | |

**ORDER**

Petitioner, Gerald Hand, was convicted by an Ohio jury of the aggravated murders of his wife, Jill Hand, and of his friend and former employee, Walter Lonnie Welch.  The same jury recommended that Hand be sentenced to death.  On May 29, 2013, this Court entered an order denying his petition for a writ of habeas corpus, concluding that no constitutional error occurred in Hand's trial or subsequent appeals which merited federal habeas relief.  (See Doc. 118)

Hand was granted additional time to file a motion for reconsideration of that order, and for a certificate of appealability.  (Doc. 120)  Hand then filed a motion under Fed. R. Civ. Proc. 59(e) to alter or amend the Court's order denying him habeas relief.  (Doc. 121)  The Magistrate Judge recommended that Hand's motion should be treated as a motion for reconsideration, because the time within which to file a motion under Rule 59(e) had already expired.  He also recommended that Hand's motion, however styled, should be denied.  (Doc. 127)  Hand objected to those recommendations (Doc. 128), and the Magistrate Judge issued a Supplemental Report, again recommending that Hand's motion be denied.  (Doc. 138)   Hand has filed his objections to the

Supplemental Report. (Doc. 139)

Motions to alter or amend a judgment under Rule 59(e) may be granted if a clear error of law exists; there is newly discovered evidence or an intervening change in controlling law; or to prevent a manifest injustice. Gencorp, Inc. v. American Int'l Underwriters, 178 F.3d 804, 834 (6th Cir. 1999)(internal citations omitted). A motion seeking the Court's reconsideration of its prior order is not expressly contemplated by the Rules of Civil Procedure and is generally disfavored. The Court will not grant reconsideration unless the moving party establishes "(1) a manifest error of law; (2) newly discovered evidence which was not available previously to the parties; or (3) intervening authority." Clevenger v. Dillard's Dep't. Stores, Inc., 2007 U.S. Dist. LEXIS 90586 (S.D. Ohio, Nov. 30, 2007) (internal citations omitted); Valente v. University of Dayton, 2009 U.S. Dist. LEXIS 108351 (S.D. Ohio, November 19, 2009)(internal citations omitted). These standards essentially mirror each other. Considered under either set of standards, Hand's motion contends that the Court's order denying habeas relief included clear errors of law that justify reconsideration.

1. Hand's First Claim for Relief.

Hand's first claim in his habeas petition alleged that his Confrontation Clause and due process rights were violated by the trial court's admission of hearsay statements made by Lonnie Welch. This Court found that the challenged statements were non-testimonial under Crawford v. Washington, 541 U.S. 36 (2004), and were properly admitted at trial. The Court also found that Hand did not fairly present a federal due process claim to the Ohio courts, and that in any event, the Ohio Supreme Court's discussion of his Confrontation Clause arguments essentially analyzed any due process

reliability concerns raised by the claim. (See Doc. 118 at pp. 17-30.) With respect to the Confrontation Clause issue, Hand's pending motion suggests that the Court's order "is internally inconsistent; either Hand killed Welch to prevent his testimony, making his statements by their very nature testimonial, or Welch's statements were non-testimonial, meaning Hand did not kill him to prevent his testimony and therefore did not commit the aggravating factor of killing to escape detection for another crime...". (Doc. 121 at p. 5.)

      The critical inquiry in determining whether Welch's statements were testimonial is what Welch intended when he made the various statements to his friends and family members. In denying this claim for relief, this Court held: "Nothing in any of [Welch's] statements, or about the circumstances under which Welch made any of the challenged statements, reflects any intent by Welch to 'bear testimony' against Hand. There is nothing in this testimony or in the record raising the possibility that any of these witnesses would cooperate or were cooperating with any investigation at the time Welch made any of the statements." (Doc. 118 at p. 24.) As the Magistrate Judge aptly noted, accepting Hand's argument would turn Confrontation Clause analysis on its head; any hearsay statement offered by a prosecutor as non-testimonial would become testimonial simply by the decision to offer the statement. The Court finds no clear error of law in its conclusion that Welch's non-testimonial statements were properly admitted, and that Hand's Confrontation Clause rights were not violated by their admission.

      With respect to Hand's due process claim, this Court found that even if that claim had been squarely presented to the Ohio Supreme Court, Hand did not articulate any meaningful difference between the Supreme Court's analysis of the reliability of Welch's

statements under Ohio Evid. R. 804(B)(6), and a "due process reliability" analysis. The Ohio Supreme Court extensively addressed Hand's objections and contentions concerning the admissibility of Welch's statements, and this Court concluded that the Supreme Court's opinion sufficiently addressed any due process claim that might arise from Hand's attack on the reliability of Welch's statements. Hand's motion for reconsideration does not address this conclusion, but simply repeats his argument that his state court appellate brief adequately presented a Fourteenth Amendment due process claim. Hand simply has not shown that this Court committed a clear error of law in rejecting that assertion.

    2. <u>Hand's Second Claim for Relief</u>.

The second claim for relief in Hand's petition argued that the admission of six incidents as prior acts evidence violated his due process right to a fair trial. This Court found that Hand did not fully and fairly present this federal constitutional claim to the state courts. But even if the passing reference in his appellate brief to the "United States Constitution" and "due process" were sufficient to present this claim, this Court alternatively found that Hand was not prejudiced by the admission of the challenged prior acts evidence. (See Doc. 118 at pp. 30-40.) Hand contends that both of these conclusions were clearly erroneous.

Hand argues that <u>McMeans v. Brigano</u>, 228 F.3d 674, 682 (6th Cir. 2000), upon which this Court relied in finding that Hand had not fairly presented a federal claim, "does not apply as broadly" as this Court held. (Doc. 121 at p. 6.) Hand does not deny that his only mention of a federal claim was in the title of Proposition of Law No. 2 in his state appellate brief. He cited no federal cases and he presented no federal

-4-

constitutional arguments. His concluding paragraph to that section of the brief simply asserted that his right to a "fair trial" had been violated. Under any reasonable application of McMeans, as well as other authorities cited in this Court's previous order, Hand has not demonstrated clear error in the Court's conclusion that he failed to fairly present a federal constitutional claim based on the prior acts evidence.

Hand also argues that this Court clearly erred in its alternative finding that he suffered no prejudice from the admission of this evidence. The Magistrate Judge noted that to support this argument, Hand simply asserts that "... the state's reliance on other alleged wrongdoing by Hand likely caused the jury to convict based on its distaste for Hand rather than on conclusive proof that Hand murdered his wife and Welch." (Doc. 127 at p. 12, quoting from Doc. 121 at p. 7.) Hand cites no law suggesting that this speculative assertion amounts to constitutional error. The Magistrate Judge also noted that there is no Supreme Court precedent finding the existence of a due process violation in the admission of "propensity evidence in the form of other bad acts evidence," citing Bugh v. Mitchell, 329 F.3d 496, 512 (6th Cir. 2003), and Bey v. Bagley, 500 F.3d 514, 520 (6th Cir. 2007). (See Doc. 127 at p. 12.)

Hand's arguments with respect to the admission of prior acts evidence are meritless. There was no clear error in the Court's order rejecting this claim.

3. Hand's Fourth Claim for Relief

Hand seeks reconsideration of two aspects of this Court's denial of his fourth claim for relief, which alleged ineffective assistance of counsel during the trial phase of his case.

Hand's trial lawyer failed to object to certain testimony from a bankruptcy lawyer,

testimony that Hand argued in his habeas petition was privileged. This Court found this sub-claim was procedurally defaulted, and that Hand did not establish good cause and resulting prejudice to excuse his default. (See Doc. 118 at pp. 43-46.) Hand's pending motion argues that the Court misunderstood his cause and prejudice argument. He admits that this sub-claim should have been raised on direct appeal and was not, and that appellate counsel was ineffective in failing to include this claim in his appeal. He argues that he could not exhaust his appellate counsel claim because he was represented by the Ohio public defender's office on direct appeal and in post-conviction proceedings. The first opportunity he had to raise this claim was in his untimely motion to reopen his direct appeal. But as the Magistrate Judge points out, Hand's attorneys from the public defender's office **did** raise this claim in the motion to reopen. Even though it was an untimely attempt, any purported conflict among the public defenders is belied by this fact.

      This Court alternatively concluded that even if this sub-claim was not defaulted, it lacked merit. The letter from the bankruptcy law firm about Hand's appointment was admitted by stipulation at trial. This Court concluded that the appointment information contained in the letter, and Hand's testimony about a conversation he had with an attorney, were very likely not privileged. Hand himself testified in his defense that he was considering bankruptcy or some form of debt protection plan, and that he had discussed his debt situation and the plan to seek bankruptcy with his wife. And given these voluntary disclosures during the trial, a reasonable appellate counsel could readily conclude that this sub-claim was legally and factually weak. Hand did not show that this sub-claim was clearly stronger than the claims his lawyers did raise on appeal, such

that the failure to include this sub-claim on direct appeal amounted to ineffective assistance of appellate counsel.  And without a cognizable ineffective assistance claim, Hand cannot excuse his procedural default.

Hand also claims clear error in the Court's rejection of his sub-claim concerning inadequate voir dire of two of his trial jurors.  He argues that this Court improperly distinguished Quintero v. Bell, 256 F.3d 409 (6th Cir. 2001), which he suggests supports his assertion that he was prejudiced by his lawyer's failure to adequately voir dire these jurors, both of whom he asserts had prejudged his guilt.

Hand concedes that he is not claiming that his jury was **not** fair and impartial; he simply argues that his lawyer should have asked more questions of the two jurors.  As the Magistrate Judge notes, Hand does not identify what questions should have been asked; nor does he contend that these jurors should have been excused for cause.  And he does not make any showing that if either of these jurors had been peremptorily challenged by Hand's lawyers, the remaining members of the jury pool would have been more favorable to his defense.  In addition, this Court did not agree that either of these jurors had "prejudged" Hand's guilt; rather, this Court concluded that their responses during the entire voir dire conducted by the trial court and counsel adequately demonstrated that they were able to put aside anything they had heard about the case, and were willing and able to follow the trial court's instructions.  Both of these jurors also provided favorable responses on their views about the death penalty.  Hand's assertion that his attorneys should have asked "more questions" does not demonstrate that this Court's rejection of this sub-claim was clear error.

The Court also concludes that it did not clearly err in distinguishing Quintero v.

Bell, as Hand contends. In that case, seven out of twelve of Quintero's trial jurors had previously served as jurors for the trial of Quintero's fellow prison escapees. The Sixth Circuit found that situation amounted to structural error. And his lawyer's failure to object to the jurors' participation in Quintero's trial was so objectively deficient that prejudice was presumed to have resulted. As this Court already concluded, Hand's arguments about the two jurors in his case do not even come close to that sort of error and the obvious prejudice resulting from the fact that Quintero's jurors had been exposed to and rendered verdicts on some of the same evidence and witnesses that the state presented in Quintero's case.

Hand's motion for reconsideration does not establish that this Court clearly erred in its prior conclusions rejecting this sub-claim.

4. Hand's Fifth Claim for Relief

Hand's fifth claim for relief raised a number of sub-claims of ineffective assistance of counsel during his sentencing hearing. He asserts that the Court committed clear error with respect to two of those sub-claims. This Court found that his claim regarding the failure to present certain testimony from Dr. Davis, his mental health expert, was barred by res judicata. And this Court rejected his claim that his attorneys should have presented evidence about medications Hand was taking that allegedly affected his ability to express emotion or remorse, finding that Hand was not prejudiced.

Hand suggests that the Court should have addressed cause and prejudice before imposing a procedural default as to the first sub-claim regarding Dr. Davis. The Magistrate Judge concluded that Hand did not raise an ineffective assistance of counsel claim (concerning trial or appellate counsel) that might establish cause for this default,

either in the state court proceedings or in this case. Moreover, even if this sub-claim was not defaulted, this Court alternatively concluded that it was meritless. Hand contends that Dr. Davis should have testified that his MMPI test results revealed that he was not a sociopath; this Court concluded: "The fact that the jury did not learn that Hand was not diagnosed with anti-social personality disorder is not the sort of powerful mitigating evidence, such as the type of evidence discussed in [Williams v. Taylor, 529 U.S. 362 (2000)], that supports a reasonable likelihood that the jury would not have imposed the death penalty if Dr. Davis had discussed those test results." (Doc. 118 at p. 79.) Hand's motion to alter or amend does not address this alternate conclusion, or suggest that it amounts to clear error.

      Hand also contends that he was prejudiced by the lack of testimony about certain medications he was taking while incarcerated during his trial and sentencing. He contends this failure left the jury with a prejudicial image that he was "cold and expressionless." (Doc. 121 at p. 10.) As the Magistrate Judge noted, Hand did not present any expert affidavit attesting to the effect that these medications may have had on his demeanor. And his suggestion that the state court noted the "lack of remorse" he exhibited during his trial or at his sentencing is simply unsupported by the record. The Ohio Supreme Court did not discuss or mention his demeanor at trial; the only mention of "remorse" was in the court's discussion concerning the admission of testimony that Hand did not appear to exhibit remorse after learning about the death of his second wife. Hand also fails to address the Court's alternate conclusion that even if this sub-claim was not defaulted, the Court would find it meritless because Hand did not show a reasonable probability of a different outcome if evidence about his two medications had

-9-

been presented to the jury. Hand has not shown any error, much less clear error, in the Court's rejection of both of these sub-claims.

     5.     Manifest Injustice.

Finally, Hand contends that the order denying habeas relief should be altered or amended with respect to his first claim for relief (the admission of Welch's hearsay statements) in order to avoid a manifest injustice. He argues that it is manifestly unjust to impose a death sentence upon him based "solely on the thirty-year-old recollections of biased individuals and a discrete statement allegedly made by Hand to a jailhouse informant." (Doc. 121 at pp. 10-11.) He cites United States v. Moored, 38 F.3d 1419 (6th Cir. 1994), which addressed a district court's authority to reconsider certain sentencing factors after an appellate remand for resentencing. In the context of that case, the Sixth Circuit concluded that "the law of the case doctrine and the mandate rule generally preclude a lower court from reconsidering an issue expressly or impliedly decided by a superior court." That rule was subject to a few limited exceptions, such as "a clearly erroneous decision that would work a manifest injustice." Id. at 1421 (internal citations omitted). Even if Moored was relevant here, the exception noted in that case is similar to the standard under which Hand's pending motion is analyzed: whether there a clear or manifest error of law in the Court's prior order. And this Court concludes that there was no clear error in its decision denying Hand's petition. Absent such an error, there is no "manifest injustice" that results in the denial of relief.

Moreover, Hand's conviction and death sentence resulted from a lengthy trial in which over 70 witnesses testified. There was far more evidence introduced of Hand's guilt than simply Welch's hearsay statements. The Ohio Supreme Court reviewed the

evidence that was introduced at Hand's trial, including the facts surrounding the murders of Hand's first two wives, Lori and Donna; the fact that Hand doubled the amount of life insurance on Lori in the year prior to her murder, and was the beneficiary of Jill's estate and her pension; Hand's inconsistent statements to police about the murders; Hand's failing marriage to Jill, his large debts, and the fact that he charged more than $24,000 on Jill's credit card without her knowledge; and the crime-scene forensic evidence that did not support Hand's version of the events on the evening of Jill's and Welch's murder.  Even if a federal court's perception of "manifest injustice" was a sufficient basis upon which to grant habeas relief (and the Supreme Court has never held that it is), this Court finds no such injustice exists here.

## CONCLUSION

For all of the foregoing reasons, the Court adopts the Magistrate Judge's Report (Doc. 127) and his Supplemental Report (Doc. 138) in full, and overrules all of Hand's objections to both of those Reports.  Hand's motion to alter or amend the order denying his petition for a writ of habeas corpus (Doc. 121) is DENIED.

This case is referred to Magistrate Judge Merz for a Report and Recommendation on Petitioner's anticipated motion for a certificate of appealability, which is due to be filed by November 21, 2013.

SO ORDERED.

DATED: November 18, 2013            s/Sandra S. Beckwith
                                                        Sandra S. Beckwith, Senior Judge
                                                        United States District Court