# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO EASTERN DIVISION AT COLUMBUS

GERALD HAND,                                    :

            Petitioner,             :

      -vs-                                      :

                               :

MARC HOUK, Warden,                         :

                               :

           Respondent.            :

Case No. 2:07-cv-846

District Judge Sandra A. Beckwith
Magistrate Judge Michael R. Merz

---

## REPORT AND RECOMMENDATIONS ON MOTION FOR CERTIFICATE OF APPEALABILITY

---

This capital habeas corpus case is before the Court on Petitioner's Motion for Certificate of Appealability (Doc. No. 142) which the Warden opposes (Doc. No. 143).  Petitioner's time to file a reply in support expired December 23, 2013, and the Motion is therefore ripe for decision.

District Judge Sandra S. Beckwith, to whom this case is assigned, entered an Order on May 29, 2013, dismissing Petitioner Hand's Petition for Writ of Habeas Corpus including all claims made in the Petition (Doc. No. 118).[1]  On November 18, 2013, Judge Beckwith denied Hand's Motion to Alter the Judgment (Order, Doc. No. 141).  Thus the case is ripe for appeal after decision of the instant motion.

---

[1] Judge Beckwith's decision is publicly reported at 2013 U.S. Dist. LEXIS 75378 and 2013 WL 2372180, but is cited hereinafter to the place where it appears on the docket of this Court.

**Standard for Certificate of Appealability**

A petitioner seeking to appeal an adverse ruling in the district court on a petition for writ of habeas corpus or on a § 2255 motion to vacate must obtain a certificate of appealability before proceeding. 28 U.S.C. §2253 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), provides in pertinent part:

> (c)
>
> (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

District courts have the power to issue certificates of appealability under the AEDPA in §2254 cases. *Lyons v. Ohio Adult Parole Authority*, 105 F.3d 1063 (6th Cir. 1997); *Hunter v. United States*, 101 F.3d 1565 (11th Cir. 1996)(en banc). Likewise, district courts are to be the initial decisionmakers on certificates of appealability under §2255. *Kincade v. Sparkman*, 117 F.3d 949 (6th Cir. 1997)(adopting analysis in *Lozada v. United States*, 107 F.3d 1011, 1017 (2nd Cir. 1997). Issuance of blanket grants or denials of certificates of appealability is error, particularly if done before the petitioner requests a certificate. *Porterfield v. Bell,* 258 F.3d 484(6th Cir. 2001); *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).

2

To obtain a certificate of appealability, a petitioner must show at least that "jurists of reason would find it debatable whether the petition states a valid claim of denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  That is, it must find that reasonable jurists would find the district court's assessment of the petitioner's constitutional claims debatable or wrong or because they warrant encouragement to proceed further.  *Banks v. Dretke*, 540 U.S. 668, 705 (2004); *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003).  If the district court dismisses the petition on procedural grounds without reaching the constitutional questions, the petitioner must also show that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *Slack*, 529 U.S. at 484.  The procedural issue should be decided first so as to avoid unnecessary constitutional rulings.  *Slack*, 529 U.S. at 485, *citing Ashwander v. TVA*, 297 U.S. 288, 347 (1936)(Brandeis, J., concurring).  The first part of this test is equivalent to making a substantial showing of the denial of a constitutional right, including showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further, *Slack v. McDaniel*, 529 U.S. 473 at 484, *quoting Barefoot v. Estelle,* 463 U.S. 880, 893 (1983).  The relevant holding in *Slack* is as follows:

> [W]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue (and an appeal of the district court's order may be taken) if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

529 U.S. at 478.

The standard is higher than the absence of frivolity required to permit an appeal to proceed *in forma pauperis.  Id.* at 893.

> Obviously the petitioner need not show that he should prevail on the merits... Rather, he must demonstrate that the issues are debatable among jurists of reason;  that a court could resolve the issues [in a different manner];  or that the questions are 'adequate to deserve encouragement to proceed further.'

*Id.* n.4.  *Accord, Miller-El v. Cockrell*, 537 U.S. 322 (2003).  A certificate of appealability is not to be issued *pro forma* or as a matter of course.  *Id*. at 1040.  Rather, the district and appellate courts must differentiate between those appeals deserving attention and those which plainly do not.  *Id*.  A blanket certificate of appealability for all claims is improper, even in a capital case.  *Frazier v. Huffman*, 348 F.3d 174 (6th Cir. 2003), *citing Porterfield v. Bell*, 258 F.3d 484 (6th Cir. 2001).  Because the decisions of a district court may be debatable among reasonable jurists as to some issues but not as to others, a court should consider appealability on an issue-by-issue basis. See 28 U.S.C. § 2253(c)(3).

Both parties recite the relevant standard in terms not inconsistent with what is set out here.  Hand cites authority from other circuits that the severity of the penalty may be considered in resolving any doubt on whether to issue a certificate.  (Motion, Doc. No. 142, PageID 15715, *citing Miller v. Johnson*, 200 F.3d 274, 280 (5th Cir. 2000), and *Petrocelli v. Angelone*, 248 F.3d 877, 884 (9th Cir. 2001).)  This Court agrees that consideration is appropriate in capital cases.

# Analysis

The Petition contains fifteen grounds for relief.  Hand seeks a certificate of appealability on Grounds One, Two, Four, Five, Six, Eight, Nine, and Eleven (Motion, Doc. No. 142, PageID 15713).  The Warden opposes a certificate on each of these Grounds (Opposition, Doc. No. 143, PageID 15796-97).  Thus the Grounds for Relief will be considered *seriatim*.

**Ground One:  Denial of Confrontation Clause and Due Process Rights**

The murdered victims in this case were Jill Hand, Petitioner's fourth wife, and Lonnie Welch.  In his First Ground for Relief, Hand asserts his due process and Confrontation Clause rights were violated when the trial court admitted testimony from eight different witnesses about statements Welch had made to them before he himself was killed by Hand.

In denying habeas relief on this claim, Judge Beckwith adopted the Magistrate Judge's analysis that admission of this testimony did not violate the Confrontation Clause because Welch's statements were not testimonial or, alternatively, that Hand had forfeited his right to confront Welsh by killing him (Order, Doc. No. 118, PageID 2824-28).  Although Hand claims reasonable jurists could disagree with these two conclusions, he has cited no case in which any judge has found statements such as those admitted in this case to have been testimonial.  In fact, under the Due Process prong of this claim, Hand argues the testimony about Welch's statements is unreliable because made by Hand's friends and relatives.  That logic completely undercuts Hand's assertion that Welch's statements were testimonial.  Welch was not trying to get Hand convicted, he was boasting to friends and relatives how he made money helping Hand kill his wives for the insurance.

Most of Hand's argument on the First Ground is directed to the asserted Due Process violation in admitting supposedly unreliable testimony.  On that claim, Judge Beckwith noted that the Supreme Court of Ohio "rejected the substance of Hand's due process challenge when it thoroughly reviewed the reliability of the challenged testimony and the veracity of the witnesses, in affirming the trial court's admission of the testimony. That decision is not contrary to clearly

established federal law." *Id.* at PageID 2830.

To show this conclusion is debatable among reasonable jurists, Hand cites *Ege v. Yukins*, 485 F.3d 364 (6th Cir. 2007); *Manson v. Brathwaite*, 432 U.S. 98 (1977); and *United States v. Hamad*, 495 F.3d 241 (6th Cir. 2007) (Motion, Doc. No. 142, PageID 15716-19).  These cases are completely inapposite.

In *Ege*, the only testimony that purported to identify Ege as the murderer was the opinion of a bite mark expert that the Ege was the only person among 3.5 million people in the greater Detroit area who could have made the bite mark found on the victim.  The district court had found the statistical portion of the testimony "carried an aura of mathematical precision pointing overwhelmingly to the statistical probability of guilt, when the evidence deserved no such credence."  Quoted at 485 F.3d 376.

In *Manson*, the Supreme Court did indeed confirm the inadmissibility under the Due Process Clause of unreliable identification testimony and listed factors to be considered in determining reliability.  However, it reversed the grant of the writ, finding no substantial likelihood of irreparable misidentification in that case.  In *Hamad*, the Sixth Circuit ruled on direct appeal that Fed. R. Crim. P. 32[2] prohibited a district judge's reliance on undisclosed *ex parte* evidence in increasing a sentence.

None of these cases involve the reliability of witness testimony about out-of-court statements by a deceased co-conspirator who has become a victim.  Most of them were friends or relatives of Lonnie Welch and Hand emphasizes their motive to punish him for Welch's murder (Motion, Doc. No. 142, PageID 15722.)  But Hand has not presented a single case in which a judge has found that a witness's motive to lie was so great as to make his or her testimony

---

[2] The court avoided a due process ruling by construing Fed. R. Crim. P. 32 to avoid constitutional doubt.  495 F.3d at 247-48.

unconstitutionally unreliable.

There is no doubt this testimony was very damaging to Hand because it tended to prove the existence of a long-term conspiracy between Hand and Welch to murder not just Hand's current wife, Jill, but two of his prior wives.  But the fact that evidence is very strong does not make it "prejudicial."

Hand's Motion for a certificate of appealability on Ground One should be denied.


**Ground Two:  Character and Other Acts Evidence**


In his Second Ground for Relief, Hand asserts that admission of character and other acts evidence deprived him of due process, a fair trial, and a reliable determination of his guilt and sentence.  The instances complained of were (1) Hand's repeated tax cheating (failing to withhold on employees' wages, failing to file a personal return), (2) Hand's reported lack of grief in reaction to news of the deaths Donna, Lori, and Jill Hand, (3) Hand's lack of sexual satisfaction in his marriage to Lori, (4) Hand's interest in "true crime" stories, and (5) Hand's harsh treatment of his father.

In dismissing this Ground for Relief, Judge Beckwith accepted the Magistrate Judge's conclusion that Hand failed to fairly present this claim as a constitutional claim to the Supreme Court of Ohio (Order, Doc. No. 118, PageID 2834-37).  The question whether an issue has been fairly presented as a constitutional claim to the state courts is often a close one in the case law. (Note the competing precedent cited by Judge Beckwith.)  While the Magistrate Judge is persuaded this Court has correctly decided this question, he agrees that reasonable jurists could find it debatable.  Hand should be granted a certificate of appealability on the fair presentation

issue.

In the alternative, assuming fair presentation *arguendo*, Judge Beckwith found Hand had failed to show a deprivation of due process or that Hand had procedurally defaulted on all but one of these claims by failure to object.  *Id.* at 2837-40.

In his Motion for Certificate of Appealability, Hand argues that much of this bad character evidence was found to be of questionable relevance by the Ohio Supreme Court.  Judge Beckwith found that, when considered in the context of a trial with seventy-five witnesses, "the five incidents Hand cites, when considered within the totality of the evidence presented at Hand's trial, are not the sort of damaging and prejudicial testimony that was involved in *Mackey* [*v. Russell*, 148 Fed. Appx. 355 (6th Cir. 2005)]."  (Order, Doc. No. 118, PageID 2838.)

Hand can obtain relief on this claim only if he can show admission of this testimony violated clearly established Supreme Court precedent.  The Sixth Circuit has held "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."  *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), noting that the Supreme Court refused to reach the issue in *Estelle v. McGuire*. 502 U.S. 62 (1991).  Nowhere in the instant Motion does Hand cite any law to the contrary.

Nor does Hand cite any law to show Judge Beckwith's procedural default holding would be debatable among reasonable jurists.  On all the complained-of instances but one, the Supreme Court of Ohio found lack of a contemporaneous objection and conducted plain error review.  The Sixth Circuit has repeatedly upheld Ohio's contemporaneous objection requirement as an adequate and independent state ground of decision.  See, e.g., *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456

8

U.S. 107, 124-29 (1982).  It has also held a state appellate court's review for plain error is

enforcement, not waiver, of a procedural default.  *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th

Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d

754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*,

422 F.3d 379, 387 (6th Cir. 2005).

It is therefore recommended that Hand be granted a certificate of appealability on his fair

presentation claim, but denied a certificate on the merits of his Second Ground for Relief and on

the Court's finding of procedural default.


**Ground Four:  Ineffective Assistance of Trial Counsel in the Guilt Phase**


In his Fourth Ground for Relief, Hand claims he was denied the effective assistance of

trial counsel during the guilt phase of his trial in eleven particular ways, each treated by Judge

Beckwith as a sub-claim.  Hand seeks a certificate of appealability on each of these sub-claims,

although he does not separately argue the cumulative ineffectiveness eleventh sub-claim.  The

sub-claims will be treated here *seriatim*.


**Sub-claim One:  Failure to Object to Testimony from Hand's Bankruptcy Attorney that
was Protected by Attorney-Client Privilege**

In the first sub-claim, Hand asserts his trial attorney was ineffective for failing to object

to testimony by his bankruptcy attorney that was protected by the attorney-client communication

privilege.

Judge Beckwith found this sub-claim was procedurally defaulted under Ohio's criminal

*res judicata* rule because it depended on evidence of record on direct appeal and therefore had to be raised in that proceeding, but was not in fact raised until Hand moved for the second time to reopen the direct appeal (Order, Doc. No. 118, PageID 2843-44).  She also found the *res judicata* rule was an adequate and independent state ground of decision.  *Id.*

Hand acknowledges that this was a claim that could have been raised on direct appeal but was not.  He then asserts it was ineffective assistance of appellate counsel not to raise the claim on direct appeal.  Ineffective assistance of appellate counsel can act as cause to excuse a procedural default at the appellate level, but only if that claim itself is not procedurally defaulted. *Edwards v. Carpenter,* 529 U.S. 446 (2000).

Hand was represented on direct appeal by Assistant Ohio Public Defenders Stephen Ferrell, Pamela Prude-Smithers, and Wendi Dotson (See Doc. No. 133, PageID 5182).  Counsel who filed his petition for post-conviction relief under Ohio Revised Code § 2953.21 was Assistant Ohio Public Defender Susan Roche.  She was joined in filing the first application for reopening in the Ohio Supreme Court on April 28, 2006, by Assistant Ohio Public Defender Veronica Bennu.  Together they pled three claims of ineffective assistance of appellate counsel on direct appeal against their colleagues Ferrell, Prude-Smithers, and Dotson.  (App. Vol. 9 at 28-39.)  However they omitted the ineffective assistance of appellate counsel claim at issue here; it was never raised in the Ohio courts until pled in the second application for reopening filed by current counsel on September 24, 2007, after Hand had filed his Petition for Writ of Habeas Corpus in this Court.

The Supreme Court of Ohio summarily denied both of Hand's applications for reopening. *State v. Hand,* 110 Ohio St. 3d 1435 (table)(2006)(2006 application); *State v. Hand*, 116 Ohio St. 3d 1435 (table)(2007)(2007 application).  Ohio S.Ct.Prac.R. XI(6) only permits one application

for reopening.  *Jones v. Bradshaw*, 489 F.Supp.2d 786, 795 (N.D. Ohio 2007), *citing State v. Jones*, 108 Ohio St. 3d 1409 (2006)(table); *Issa v. Bradshaw*, No. 1:03-cv-280, 2007 WL 7562139 at *12-13 (S.D. Ohio Dec. 20, 2007) and *Issa v. Bradshaw*, No. 1:03-cv-280, 2008 WL 8582098 at *49 (S.D. Ohio Nov. 5, 2008), both citing *State v. Issa*, 106 Ohio St. 3d 1407 (2005)(table).  Furthermore, under the same Rule, any such application must be filed within ninety days of issuance of the mandate by the Supreme Court of Ohio.  In Hand's case, that mandate was issued January 18, 2006 (Judgment Entry, Doc. No. 133-9, PageID 6184).  Thus the first application for reopening was timely, but the second application, raising the claim at issue here, was not.  Thus Hand committed two procedural defaults in presenting this claim to the Ohio courts, missing the time deadline and presenting the claim in a second application.

Where a state court is entirely silent as to its reasons for denying requested relief, as when the Ohio Supreme Court denies leave to file a delayed appeal by form entry, the federal courts assume that the state court would have enforced any applicable procedural bar. *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), *citing Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Hand claims he comes within an exception to the *res judicata* rule based on the identity of the lawyers involved:  "Hand could not exhaust the [claim of] the ineffectiveness of his appellate counsel because his post-conviction counsel were members of the same law office, and attorneys are not expected to raise their own ineffectiveness nor that of their colleagues." (Motion, Doc. No. 142, PageID 15731-32, *citing State v. Cole*, 2 Ohio St. 3d 112, 113 n. 1 (1982); *Combs v. Coyle*, 205 F.3d 269, 276 (6th Cir. 2000); *Jamison v. Collins*, 100 F. Supp. 2d 521, 572 (S.D. Ohio 1998); and *State v. Lentz*, 70 Ohio St. 3d 527 (1994)).

The source of the criminal *res judicata* doctrine in Ohio is *State v. Perry*, 10 Ohio St. 2d

175 (1967):

> 7. Constitutional issues cannot be considered in postconviction proceedings under Section 2953.21 et seq., Revised Code, where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment, and thus have been adjudicated against him.  ...

> 9. Under the doctrine of *res judicata*, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was *raised or could have been raised by the defendant at the trial*, which resulted in that judgment of conviction *or on an appeal* from that judgment.

*Perry*, 10 Ohio St. 2d at 176 (syllabus)(emphasis *sic*).  However, Ohio law has recognized for at least forty years that a lawyer cannot be expected to raise his own ineffectiveness.  *State v. Carter*, 36 Ohio Misc. 170 (Mont. Cty CP 1973)(Rice, J.).  The Supreme Court of Ohio then recognized an exception to *Perry*:  "Where a defendant, represented by new counsel on direct appeal, fails to raise therein the issue of competent trial counsel and said issue could fairly have been determined without resort to evidence *dehors* the record, *res judicata* is a proper basis for dismissing defendant's petition for post-conviction relief."  *State v. Cole*, 2 Ohio St. 3d 112 (1982)(syllabus, modifying *State v. Hester*, 45 Ohio St. 2d 71 (1976).  In *State v. Lentz*, 70 Ohio St. 3d 527 (1994), the court found that the *res judicata* exception recognized in *Cole* was "highly personal," and thus would only apply when the same person was counsel at trial and on appeal. *Lentz* applied *res judicata* where two different attorneys from the same public defender's office represented the defendant at trial and on appeal.  *Lentz* left open the possibility of an exception if an actual conflict of interest were shown.

In *Combs v. Coyle,* 205 F.3d 269 (6th Cir. 2000), a capital habeas corpus case from this

Court, the Sixth Circuit recognized the temporal dimensions of Ohio's criminal *res judicata* rule.

The State had argued that *res judicata* applied where Combs was represented on direct appeal by

one of his trial attorneys and one new attorney.  The state appellate court accepted that defense

on the basis of *Ohio v. Zuern*, 1991 Ohio App. LEXIS 5733 (1ˢᵗ Dist. 1991), which held:

> Unless we presume . . . that new co-counsel entering upon a
> criminal case at the appellate level would deliberately not
> exercise his professional judgment or duty to assert the ineffectiveness of
> his co-counsel at trial if the record demonstrated a basis for such a
> claim, a presumption we adamantly reject, we perceive no reason
> why the reference in *Cole* to 'new counsel' would not embrace new
> co-counsel as well as new independent counsel.

*Id.* at * 12.  The Sixth Circuit went on to note that, while the *Zuern* decision had been repeatedly

followed by Ohio courts since it was handed down, "*Zuern* was not decided until after the court

of appeals had ruled on Combs' direct appeal."  In a footnote, the Sixth Circuit questioned

whether *Zuern* was firmly established even as of 2000:

> Even today, it is not clear that the *Zuern* rule would qualify as a
> firmly established state procedural rule. The Ohio Supreme Court
> has never spoken on the issue, and not all the courts of appeals
> agree with the outcome in *Zuern*. Furthermore, the reasoning in
> *Zuern* seems to be in tension with that of the Supreme Court of
> Ohio in *Lentz*. *Lentz* can be read for the proposition that if a new
> attorney represents a defendant on appeal, *res judicata* applies
> unless there is an actual conflict. There may well be an actual
> conflict in a situation in which trial counsel is simply joined by a
> new attorney on direct appeal, thus suggesting that the per se rule
> of *Zuern* is the incorrect approach.

*Combs*, 205 F.3d at 277, n. 3.

In *State v. Hutton*, 100 Ohio St. 3d 176 (2003), a case not cited by Hand, the Supreme

Court of Ohio held "that the doctrine of *res judicata* does not apply to bar a claim of ineffective

assistance of appellate counsel not previously raised in an appeal where the defendant was

represented on appeal by the same attorney who allegedly earlier provided the ineffective

assistance, even where the defendant was also represented on that appeal by another attorney who had not represented the defendant at the time of the alleged ineffective assistance." *Id*. at ¶ 42, adopting the position of the Ohio Sixth District Court of Appeals in *Evans, supra*, counter to the *Zuern* rule.

In *Landrum v. Mitchell*, 625 F.3d 905 (6th Cir. 2010), the Sixth Circuit followed *Hutton* and found that *res judicata* did not apply to persons in Landrum's situation (trial counsel continues on appeal, but new co-counsel joins the case). *Id.* at 920. Landrum had also completed his direct appeals before *Zuern* was decided. *Id.* at 221.

Hand cannot bring his claim within the actual conflict of interest exception recognized in *Lentz* because his post-conviction counsel from the Ohio Public Defender office actually did assert the ineffective assistance of their colleagues when they filed the first application for reopening. If there was no actual conflict of interest in bringing the three ineffective assistance of appellate counsel claims made in the first application, there could hardly have been a conflict of interest as to the fourth ineffective assistance of appellate counsel claim, the one relevant to this ineffective assistance of trial counsel sub-claim. Hand was represented in his first application for reopening by a different lawyer from the attorneys who handled his direct appeal, but they were all from the same office. Hand has presented no case law showing any reasonable jurist would disagree with this analysis and therefore should be denied a certificate of appealability on this sub-claim.

Assuming arguendo the procedural default had been excused, Judge Beckwith went on to find on the merits that there was no actual ineffective assistance of trial counsel because Hand had waived the attorney-client protection by himself taking the stand and testifying at length about his bankruptcy plans and discussion of them with an attorney (Order, Doc. No. 118,

14

PageID 2845-46).  Hand makes no argument that reasonable jurists would disagree with this conclusion.

Hand should therefore be denied a certificate of appealability on this sub-claim.

**Sub-claim Two:  Failure to Adequately Question Prospective Jurors Regarding Their Awareness of Pretrial Publicity.**

In his second sub-claim, Hand asserts his trial counsel were ineffective for failure to ask further questions of Jurors Ray and Finnamore.

Judge Beckwith found Hand was not prejudiced by trial counsel's failure to ask more questions of these two jurors nor by appellate counsels' failure to include this as a specific sub-claim on appeal (Order, Doc. No. 118, PageID 2852).

The question of whether pretrial publicity was prejudicial and whether voir dire was sufficient to remove any taint from the jurors who actually served is very fact-specific. Reasonable jurists could disagree with this Court's evaluation of those facts and Hand should be granted a certificate of appealability on sub-claim two.

**Sub-claim Three:  Failure to Move for a Change of Venue and Exercise All Available Peremptory Challenges.**

In his third sub-claim, Hand asserts he received ineffective assistance of trial counsel when his counsel did not move for a change of venue in light of adverse pretrial publicity and did not exercise all available peremptory challenges.  Judge Beckwith found that these claims were barred by *res judicata* as the state court of appeals had held on post-conviction (Order, Doc. No. 118, PageID 2853-54).  Hand does not seek a certificate of appealability on the peremptory

challenges point, but asserts the default of the change of venue point is debatable among reasonable jurists.

Ohio's criminal *res judicata* doctrine, outlined above, plainly precludes raising in a post-conviction petition an issue which could have been decided on the record on direct appeal.  Hand claims to come within an exception to that rule because he filed exhibits with the post-conviction petition – newspaper articles about the case – which were not part of the direct appeal record.

A petitioner in a post-conviction proceeding is not automatically entitled to an evidentiary hearing, but must present sufficient documentary evidence *dehors* the record to show entitlement to a hearing.  *State v. Jackson,* 64 Ohio St. 2d 107 (1980).  The rule in *State v. Jackson* is an adequate and independent state ground for procedural default purposes.  *Sowell v. Bradshaw*, 372 F.3d 821 (6th Cir. 2004), *citing Lorraine v. Coyle*, 291 F.3d 416, 426 (6th Cir. 2002).  The state court of appeals held the newspaper articles were not sufficient because they all existed and were all publicly available at the time of trial, so they could have been made part of the record on direct appeal.  Judge Beckwith accepted this argument (Order, Doc. No. 118, PageID 2854) and Hand has not shown any way in which that conclusion would be debatable among reasonable jurists.  He should therefore be denied a certificate of appealability on sub-claim three.

**Sub-claim Four:  Failure to Act Upon and Utilize Hand's Report of an Escape Attempt at the Delaware County Jail.**

In his fourth sub-claim Hand asserts he received ineffective assistance of trial counsel when his attorneys did not use a report he made to them about an escape attempt at the Delaware County Jail.  This claim was first raised in post-conviction and rejected by the Ohio courts on the

same basis as sub-claim three:  lack of sufficient evidence outside the record to avoid the *res judicata* bar.  *State v. Hand*, 2006-Ohio-2028, ¶ 21, 2006 Ohio App. LEXIS 1865 (5th Dist. Apr. 21, 2006).  Judge Beckwith found this sub-claim was procedurally defaulted on the basis cited by the state court (Order, Doc. No. 118, PageID 2856).

In his Motion for Certificate of Appealability, Hand presents no basis on which reasonable jurists could disagree with this conclusion.  In particular, the court of appeals found Hand's affidavit only repeated his trial testimony to the same effect and stated its reasons why such an affidavit, if accepted, would completely defeat the *res judicata* doctrine.  Hand should be denied a certificate of appealability on this sub-claim.

**Sub-claim Five:  Failure to Exclude Biased Prospective Jurors**

In his fifth sub-claim, Hand asserts he received ineffective assistance of trial counsel when his trial attorneys failed to exclude Juror Lombardo.[3]  The Ohio Supreme Court reached this claim on the merits and held against Hand.  Judge Beckwith found the Ohio Supreme Court's decision was neither contrary to nor an objectively unreasonable application of clearly established United States Supreme Court precedent (Order, Doc. No. 118, PageID 2856-61).

Hand argues that this conclusion would be debatable among reasonable jurists, but the Magistrate Judge disagrees.  Hand argues that "[d]ue to her numerous experiences with violent crime and her close family connection to the victim in this case, there was no reasonable strategy for allowing Juror Lombardo to remain on the jury."  (Motion, Doc. No. 142, PageID 15740.)  This sentence grossly overstates Juror Lombardo's connection to Jill Hand:  her husband was

---

[3] While the claim is phrased in the plural as if it related to multiple jurors, in fact only the failure to exclude Juror Lombardo is at issue.

acquainted with Jill Hand because she worked at the Ohio Bureau of Motor Vehicles and he was

an investigator with the Ohio Attorney General's Office (Trial Trans. Vol. 5 at 697).  That is not

a "close family connection."

More importantly, Juror Lombardo's experience with violent crime was uniquely

favorable to Hand.  Hand's defense was that he had shot Lonnie Welch in self-defense.  About

thirty years before the trial, Ms. Lombardo had witnessed an intruder at her place of work pull a

gun on her employer and her employer shoot the intruder.  Ms. Lombardo had testified in the

employer's defense at his murder trial, which ended in an acquittal on the basis of self-defense.

*Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court's leading case on

ineffective assistance of trial counsel, requires the lower courts to defer to strategic decisions of

trial counsel.  The Sixth Circuit has recently held

> When evaluated under § 2254(d), a court's review of a *Strickland*
> claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S.
> 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). The state
> court's own *Strickland* analysis must receive the benefit of the
> doubt, and "[t]he question is whether there is any reasonable
> argument that counsel satisfied *Strickland*'s deferential standard."
> *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L. Ed. 2d 624
> (2011).

*Washington v. McQuiggin*, 529 Fed. Appx. 766, 770, 2013 U.S. App. LEXIS 14165 (6th  Cir.

2013).  Reviewed under this doubly deferential standard, it is easy to see why a trial attorney

faced with a choice like this in a capital case where self-defense was the key issue would want to

keep Ms. Lombardo.  Reasonable jurists would not disagree and Hand should be denied a

certificate of appealability on this fifth sub-claim.


**Sub-claim Six:  Failure to Object to the Admission of Co-Conspirator Statements**

In his sixth sub-claim, Hand asserts trial counsel was ineffective for not objecting to the admission of statements of Welch as co-conspirator statements because, he claims, there was no independent proof of the conspiracy's existence.  The Ohio Supreme Court concluded the statements were admissible under Ohio R. Evid. 804(B)(3) as statements against Welch's penal interest, but also that there was independent proof of the conspiracy.  Therefore, it concluded, Hand suffered no prejudice from what his trial attorneys did with respect to this evidence.  *State v. Hand*, 107 Ohio St. 3d 378, ¶¶ 100-102, 216.

It cannot be prejudicial ineffective assistance of counsel to fail to make a particular objection to the admission of certain evidence if (1) the objection would not have been well taken or (2) the evidence was admissible on another ground.  The Ohio Supreme Court, applying Ohio evidence law, found both of these points satisfied.  In the absence of prejudice, there can be no valid claim of ineffective assistance of trial counsel.  Reasonable jurists would not disagree, so Hand should be denied a certificate of appealability on this sub-claim.

**Sub-claim Seven:  Failure to Object to Other Bad Acts Evidence and Argument**

In his seventh sub-claim, Hand asserts he suffered ineffective assistance of trial counsel when his trial attorneys failed to object to other-acts evidence (Motion, Doc. No. 142, PageID 15742).  The Supreme Court of Ohio rejected this claim on the basis that Hand had shown no prejudice.  *State v. Hand, supra,* at ¶ 217.  Judge Beckwith agreed and also found the evidence was admissible (Order, Doc. No. 118, PageID 2862-63).

Hand argues at some length in his instant Motion about the importance of not convicting

people on the basis of propensity or bad character evidence[4] (Doc. No. 142, PageID 15743-45).

He offers no citation of law, however, to contravene the Sixth Circuit's conclusion in *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir. 2003), quoted above with respect to Ground Two, that the United States Supreme Court has never held the use of bad character or other acts evidence to be unconstitutional.  Furthermore, the Supreme Court of Ohio found all of the objected-to other-acts evidence was in fact admissible under Ohio law, a conclusion which is binding on the federal courts.  It cannot be ineffective assistance of trial counsel to fail to object to evidence which is admissible.  Finally, Judge Beckwith weighed this evidence with the large amount of evidence of guilt presented at trial and found no prejudice (Order, Doc. No. 118, PageID 2862).  Hand has not shown how reasonable jurists would disagree and should therefore be denied a certificate of appealability on this sub-claim.


**Sub-claim Eight:  Failure to Present Evidence of Self-Defense at Hearsay Hearings**


The trial court held three hearings *in limine* on the question of whether the victim Lonnie Welch's statements could be admitted against Hand under Ohio R. Evid. 804(B)(6).  To succeed, the prosecution had to show that Hand killed Welch to make him unavailable to testify.  In this eighth sub-claim, Hand asserts he received ineffective assistance of trial counsel when his attorneys failed to raise the claim of self-defense at those hearings.  The Supreme Court of Ohio decided that the issue could not have been raised without Hand testifying personally at the hearing and the record before that court did not establish whether Hand or his counsel made the

---

[4] In the Motion, Hand states he is complaining  in this sub-claim about "other-acts evidence  in this case relating to escape and the prior murders of Donna and Lori Hand."  Doc. No. 142, PageID 15742.  However nothing about any such other acts evidence is part of this sub-claim.  Instead, both here and in the Supreme Court of Ohio, the claim was about fraudulent business practices, emotional reactions to Donna and Lori's deaths, sex-related testimony, childhood interest in "true crime" stories, and forcing his father out of business.  *State v. Hand, supra,* ¶¶ 110-161.

decision that he would not testify at the hearing.  The court determined that if Hand himself decided not to testify at that point, his ineffective assistance of trial counsel claim was foreclosed.  On the other hand, if the lawyers made the decision, this would have been an appropriate tactical decision to avoid early cross-examination by the prosecutor.  *State v. Hand*, 110 Ohio St. 3d at ¶¶ 218-20.  Judge Beckwith found this ruling was neither contrary to nor an objectively unreasonable application of clearly established Supreme Court precedent (Order, Doc. No. 118, PageID 2864).

In seeking a certificate of appealability on this sub-claim, Hand argues his counsel were "ineffective for not putting forth evidence of self-defense in rebuttal to the prosecutor's arguments for the admittance of multiple hearsay statements [by Welch]" (Motion, Doc. No. 142, PageID 15746).  This argument begs the question on which the Ohio Supreme Court's decision turned:  what evidence, other than Hand's own testimony?

Hand faults the Ohio Supreme Court's evaluation of the evidence on this point:

> There were no facts in the record from which the court could have determined that Hand refused to testify pretrial or that his attorneys considered the decision not to have him testify as trial strategy.  In fact, it was equally as plausible that Hand's counsel did not present him as a witness at the hearsay hearings because they did not recognize the need to rebut the prosecution's theory.  As such, the Ohio Supreme Court's opinion is buttressed by unreasonable factual determinations which reasonable jurists could conclude entitled Hand to relief under § 2254(d)(2).

*Id.*  This argument elides an important part of § 2254(d)(2):  to qualify for relief under that section, the determination of the facts must be unreasonable "in light of the evidence presented in the State court proceeding."  Hand points to no place in the record of these hearings where he asked to testify nor to any place in the post-conviction record where he says he was prepared to testify at that point.  If, as Hand argues, it is equally plausible that the lawyers just did not think

about it as that they made a tactical decision, the trial attorneys are entitled to the benefit of the doubt.  The Ohio courts are also entitled to the benefit of the doubt.  As has been noted above,

> When evaluated under § 2254(d), a court's review of a *Strickland* claim is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009). The state court's own *Strickland* analysis must receive the benefit of the doubt, and "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L. Ed. 2d 624 (2011).

*Washington v. McQuiggin*, 529 Fed. Appx. 766, 770, 2013 U.S. App. LEXIS 14165 (6th Cir. 2013).

And finally, the ignorance hypothesis is not equally plausible.  Any trial lawyer would have known presenting self-defense required Hand to testify – there were no other witnesses.  And no trial lawyer would have willing given the prosecutor what would have amounted to a pre-trial deposition of his client on the crux of the defense case if he could avoid it.

Reasonable jurists would not find Judge Beckwith's conclusion on this sub-claim debatable and Hand should therefore be denied a certificate of appealability.

**Sub-claim Nine:  Failure to Call Philip Anthony as a Defense Witness**

In his ninth sub-claim, Hand claims he received ineffective assistance of trial counsel when his attorneys did not call Philip Anthony as a defense witness at trial.  Anthony was a cousin of Welch to whom Welch had made statements incriminating both himself and Hand in the murders of all three of Hand's deceased wives.  During the *in limine* proceedings, the prosecution obtained court permission to elicit Welch's statements from Anthony but then did not call him as a witness at trial.  Hand's attorneys attempted to have the judge call Anthony as a

court's witness because they said they could not "vouch" for him.[5]  The trial judge refused and counsel then declined to call Anthony.

As Judge Beckwith's decision makes clear, Anthony had some testimony about the mode of entry of the person who murdered Donna and Lori that might have been helpful to Hand's self-defense theory (Order, Doc. No. 118, PageID 2866-70).  However, much of what Anthony had to say would have been harmful to Hand's case, particularly because he had admissions from Welch about the murder of all three wives.  Based on the doubly deferential standard cited as to sub-claims five and eight, there is little question that the decision not to call Anthony was a reasonable tactical decision by counsel.  Judge Beckwith's decision to defer would not be debatable among reasonable jurists and a certificate of appealability should be denied on this sub-claim as well.


**Sub-claim Ten:  Failure to Request Certain Jury Instructions**


In his tenth sub-claim, Hand asserts he received ineffective assistance of trial counsel when his counsel failed to request limiting instructions on the "other acts" evidence and a definition of "course of conduct" as used in the capital specifications.  Judge Beckwith rejected this claim on the merits, deferring to the Ohio Supreme Court's conclusion that Hand had not shown prejudice from omission of these instructions or that it would have been reasonable for counsel to call the jury's attention to the other acts evidence by requesting an instruction (Order, Doc. No. 118, PageID 2875).  As to the omitted "course of conduct" instruction, Judge Beckwith

---

[5] At common law, a party was said to "vouch" for the witnesses that party called and could not impeach them.  IIIA Wigmore § 896 (Chadbourn Rev. 1970).  The policy behind that rule was seriously questionable, *id.*, and it was abolished in federal practice with the adoption of Fed. R. Evid. 607 in 1975 and in Ohio practice on adoption of Ohio R. Evid. 607 in 1980.  Hand would have been permitted to impeach Anthony had he called him, but witnesses are still identified in the lay mind with the party that calls them and this may have been on counsel's mind.

found no error in its omission and therefore no ineffective assistance of trial counsel in failing to request it.

Hand has presented no basis on which Judge Beckwith's conclusions would be debatable among reasonable jurists.  He should therefore be denied a certificate of appealability on this sub-claim.

**Sub-claim Eleven:  Cumulative Effect of Ineffective Assistance of Trial Counsel**

Hand makes no request for a certificate of appealability on this sub-claim (See Motion, Doc. No. 142, PageID 14750).

**Ground for Relief Five:  Ineffective Assistance of Trial Counsel at the Sentencing Phase of Trial**

As with Ground for Relief Four, Hand presents a number of specific claims of ineffective assistance of trial counsel at the sentencing phase of the trial.  These will also be considered *seriatim*.

**Sub-claim Two[6]:  Failure to Present Additional Expert Psychological Testimony**

Hand's counsel hired a forensic psychologist, Dr. Davis, who testified in mitigation that Hand would adjust well to prison life.  In this sub-claim Hand asserts his counsel should also have elicited testimony from Davis that Hand was "truthful, open, and cooperative; that his test results did not reveal characteristics similar to those of an antisocial personality disorder; and that Hand's psychiatric profile was not consistent with the typical traits of a 'cold calculating

---

[6] A section of the Motion labeled "1" argues generally about counsel's lack of preparation. *Id.* at PageID 15752.  It is not argued as a separate sub-claim.  Nevertheless, this Report retains the numbering used in the Motion for ease of reference.

24

antisocial personality.'" (Order, Doc. No. 118, PageID 2877, quoting Petition at ¶ 86.)

On direct appeal Hand had discussed Dr. Davis in the broader context of his counsel's lack of preparation for mitigation.  When he attempted to present this specific claim in post-conviction, the Ohio court of appeals found it barred by *res judicata*.  *State v. Hand*, 2006-Ohio-2028, ¶ 33, 2006 Ohio App. LEXIS 1865 (5th Dist. Apr. 21, 2006).  Alternatively, it found no ineffective assistance of trial counsel *Id.* at ¶ 35.

In this Court, Hand objected that the Ohio court of appeals was in error in finding he did not include material *dehors* the record on this claim, to wit, Dr. Davis' Affidavit reporting his Minnesota Multiphasic Personality Inventory ("MMPI") test results.  Judge Beckwith found that the record showed Davis had given these results to trial counsel before testifying and the sub-claim should therefore have been raised on direct appeal and was accordingly barred by procedural default (Order, Doc. No. 118, PageID 2878).  Alternatively, she found the claim was without merit, concluding it was very unlikely the jury would have spared Hand's life just because he was not diagnosed with antisocial personality disorder .  *Id.* PageID 2879-81.

In the instant Motion, Hand does not request a certificate of appealability on the *res judicata* issue and none should be granted on that issue.  Instead, he attempts to bring the facts of this case within the ambit of *Glenn v. Tate*, 71 F.3d 1204 (6th Cir. 1996), and *Williams v. Taylor,* 529 U.S. 362 (2000) (Motion, Doc. No. 142, PageID 15753-58).  The omitted MMPI results here are nowhere near the omitted evidence in those cases.  Nonetheless, the appellate courts have shown a distinct tendency to consider omitted mitigation evidence closely.  See, e.g., *McGuire v. Warden*, ___ F.3d ___, 2013 U.S. App. LEXIS 25767 *28-47 (6th Cir., Dec. 30, 2013).  Such detailed attention bespeaks debate among reasonable jurists.  Therefore, it is respectfully recommended that a certificate of appealability be issued on the merits of this sub-claim.

**Sub-claim Three:   Failure to Present Evidence of Hand's Family Dysfunction and Abysmal Childhood Through Family and Friends**

In his third sub-claim, Hand asserts he received ineffective assistance of trial counsel when his trial attorneys failed to submit evidence concerning his dysfunctional family background and "abysmal" childhood.  This claim was raised on direct appeal where the claim was phrased as failure to call family members to testify about the "chaotic, abusive home in which hand was raised" and to call long-term friends to testify to his generosity.  The Ohio Supreme Court noted that Dr. Davis had testified about his alcoholic father, his placement in Childrens' Services, and his military service.  The claim was also reviewed on the merits in post-conviction.

Judge Beckwith denied this sub-claim, finding that it was a reasonable tactical decision to present the substance of this evidence through Dr. Davis.  She found the decision "comports with a strategy of attempting to personalize Hand to the jury, and of demonstrating not only that he could adequately respond to life in prison, but that he could also contribute to improving other inmates' lives."  (Order, Doc. No. 118, PageID 2883.)

In the instant Motion, Hand refers to the same evidence but contends it would have been much more persuasively presented if it had come in through family and friends instead of Dr. Davis.  Essentially Hand quarrels not with the substance of the evidence presented, but with the strategic use made of the evidence.

By the time this evidence was being presented, the jury had already convicted Hand in the murders of Jill Hand and Lonnie Welch and had heard testimony from which it could reasonably have inferred that Hand conspired with Welch to murder former wives Donna and

26

Lori.  The self-defense claim had failed to persuade the jury.  It was certainly not unreasonable to attempt to persuade the jury to recommend life without parole, and both Davis' testimony and Hand's unsworn statement were directed to that end.  Hand has presented no case law which persuades the Magistrate Judge that reasonable jurists would not apply the doubly deferential standard of *Harrington v. Richter* to this sub-claim, on which a certificate of appealability should be denied.


**Sub-claim Four:  Failure to Present Pharmacological and Lay Witness Testimony to Explain Hand's Demeanor While Testifying**

In his fourth sub-claim, Hand argues he received ineffective assistance of trial counsel when his trial attorneys did not present pharmacological evidence and lay witness testimony to explain his "confusing and discombobulated manner of communicating" (Motion, Doc. No. 142, PageID 15761).

Judge Beckwith denied this sub-claim on the merits, noting Hand had presented no proof that this additional evidence would probably have changed the result (Order, Doc. No. 118, PageID 2885).

In seeking a certificate of appealability on this sub-claim, Hand quotes four excerpts of his confusing testimony, then his deficiencies in speaking clearly "were likely symptoms of the psychotropic drugs he was administered at the time."  (Motion, Doc. No. 142, PageID 15761.) However, as this claim was argued in post-conviction, it was that trial counsel should have presented friends as witnesses to testify he was always a poor speaker (Appendix, Vol. 10 at 101).  Which is it – a short-term effect of psychotropic drugs or long-term inability to speak? And where is the evidence to link the psychotropic drugs actually prescribed (Buspar for anxiety

and Trazadone for depression) to poor ability to communicate?

Reasonable jurists would not find judge Beckwith's disposition of this claim on the merits to be debatable, and no certificate of appealability should be issued.

**Sub-claim Five:  Failure to Present Testimony Regarding Hand's Third Wife**

Hand's third wife, Glenna, was not murdered.  Instead, Hand divorced her after they had been married several years.  He claims prejudice from the failure to let the jury hear from his son and sister about his one marriage that did not end in murder.

This claim was first raised in post-conviction and supported by affidavits from Sally Underwood, Hand's sister, and his son, Robert, describing Glenna's abusive personality.  Judge Beckwith denied this sub-claim on the merits, agreeing with the Magistrate Judge that it would be extremely speculative to conclude this testimony would have changed the result, given that Hand himself testified about his marriage with Glenna (Order, Doc. No. 118).  Reasonable jurists would not find this conclusion debatable, and a certificate of appealability should not issue on this sub-claim.

**Sub-claim Six:  Failure to Investigate and Present an Effective Mitigation Strategy and Failure to Give a Penalty Phase Closing Argument**

In his sixth sub-claim, Hand presents a more general failure to investigate mitigating evidence claim.  This claim was raised on direct appeal and rejected on the merits by the Supreme Court of Ohio which described the investigation and preparation that had been done.  That court also found the mitigation strategy of presenting hand as a potential model inmate if

his life was spared was a reasonable strategic decision.  *State v. Hand*, 107 Ohio St. 3d at ¶¶ 224-29.  Judge Beckwith found the state court decision was not an unreasonable application of clearly established federal law (Order, Doc. No. 118, PageID 2894).

While the Magistrate remains persuaded of the correctness of this decision, the tendency of the appellate courts to scrutinize trial counsels' mitigation presentations, mentioned above, suggests this conclusion is debatable among reasonable jurists and a certificate of appealability should be issued on this sub-claim.


**Sub-claim Seven:  Failure to Object to the Admission of All Guilt-Phase Evidence at the Sentencing Phase**

At the close of the sentencing hearing, the state moved to admit all the guilt-phase exhibits (except for those related to the escape attempt) into evidence in the sentencing phase. Hand's counsel did not object and the trial judge admitted the exhibits.  The Ohio Supreme Court rejected this claim on the merits.  Judge Beckwith noted the failure of appellate counsel to identify any exhibits that were irrelevant to sentencing and independently found that the complained-of exhibits would have been relevant to sentencing.

Because this is a determination made in the first instance in this Court, reasonable jurists could debate the issue and a certificate of appealability should be issued.


**Ground Six:  Inadequate Trial Court Voir Dire on Pretrial Publicity**

In his Sixth Ground for Relief, Hand contends the trial judge's voir dire regarding pretrial publicity was constitutionally inadequate.  This claim was omitted from the direct appeal.  It was

included as an improperly omitted assignment of error in the April 2006 application for reopening which was summarily denied. *State v. Hand,* 110 Ohio St. 3d 1435 (2006) (table). It was also presented in post-conviction with copies of the newspaper coverage of the case. The Fifth District Court of Appeals found the claim barred by *res judicata*. *State v. Hand*, 2006-Ohio-2028, ¶ 23, 2006 Ohio App. LEXIS 1865 (5th Dist. Apr. 21, 2006). Judge Beckwith agreed, the basis in the direct appeal record Hand would have had to raise this issue there (Order, Doc. No. 118, PageID 2897-2901). She offered an alternative analysis on the merits. *Id.* at PageID 2901-02.

Hand seeks a certificate of appealability only on the procedural default issue (Motion, Doc. No. 142, PageID 15769). In contrast to the usual rule requiring federal courts to defer to state court rulings on state law issues, when the record reveals that the state court's reliance on its own rule of procedural default is misplaced, federal habeas review is not be precluded. *White v. Mitchell*, 431 F.3d 517, 527 (6th Cir. 2005), *citing Hill v. Mitchell*, 400 F.3d 308 (6th Cir. 2005); *Greer v. Mitchell,* 264 F.3d 663, 675 (6th Cir. 2001).

In support of his Motion, Hand notes that the court of appeals determined that the newspaper articles submitted in post-conviction were outside the record on direct appeal. Since all of those clippings would have been available to include in the appeal record, this issue is one that could have been raised on direct appeal. Nevertheless, whether the court of appeals was correct in its *res judicata* ruling is debatable among reasonable jurists and a certificate of appealability should be granted on this issue.

**Ground Eight:  Insufficient Evidence to Support Escape Conviction**

In his Eighth Ground for Relief, Hand asserts there was insufficient evidence presented at trial to support his conviction for escape.  The claim was raised on direct appeal and rejected by the Supreme Court of Ohio, applying the appropriate Fourteenth Amendment standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  *State v. Hand,* 107 Ohio St. 3d 378, ¶¶ 172-77.  Judge Beckwith rejected this claim, applying the doubly deferential standard of review required in habeas for sufficiency of the evidence claims (Order, Doc. No. 118, PageID 2907, citing *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  See also *Coleman v. Johnson*, 566 U.S. ___, ___, 132 S. Ct. 2060, 2062, (2012)(*per curiam*).

In seeking a certificate of appealability, Hand again emphasizes the evidence opposed to his conviction.  The gist of the argument is that the witnesses against his conviction must, as a matter of constitutional law, be given sufficient credibility to create a reasonable doubt.  The standard under *Jackson* is that the evidence must be construed most strongly in favor of the prosecution.  The Magistrate Judge continues to believe this Ground for Relief was properly rejected, but the weighing of evidence is a matter of judgment on which reasonable jurists could disagree.  Therefore it is respectfully recommended that a certificate of appealability be granted on the Eighth Ground for Relief.

**Ground Nine:  Improper Jury Instructions**

In his Ninth Ground for Relief, Hand asserts the trial court committed constitutional error in its jury instructions in three particulars.

**Sub-claim One:  Complicity Instruction**

With respect to the murder of Jill Hand, the State amended the bill of particulars after the close of the evidence to allege complicity in her death as an alternative to Hand's being the principal offender. On the basis of this amendment, the trial judge instructed the jury on complicity. Error with respect to both of these trial court decisions formed the basis of Hand's Fifth Proposition of Law on direct appeal. Relying on Ohio R. Crim. P. 7(D), the Supreme Court of Ohio rejected both claims. *State v. Hand,* 107 Ohio St. 3d 378, ¶¶ 178-84 (2006). Judge Beckwith concluded this decision was not contrary to or an objectively unreasonable application of clearly established federal law (Order, Doc. No. 118, relying on *Hill v. Perini,* 788 F.2d 406 (6th Cir. 1986), and *Stone v. Wingo,* 416 F.2d 857 (6th Cir. 1969)).

In seeking a certificate of appealability on this Ground for Relief, Hand relies on his Sixth Amendment right to be notified of the nature and cause of the accusation (Motion, Doc. No. 142, PageID 15774). Essentially he complains about the timing of the notice, not its content. Judge Beckwith noted in her decision, "Hand has not identified how the purported lack of notice prejudiced his defense, and he failed to seek a continuance after the amendment was granted." (Order, Doc. No. 118, PageID 2912.) Hand has not cured that deficiency in his Motion for Certificate of Appealability. Nor has he made any specific complaint about the content of the complicity instruction, as opposed to the amendment to the bill of particulars. Hand has not shown his entitlement to a certificate of appealability on this sub-claim.

**Sub-claim Two:  Failure to Narrow the Course-of-Conduct Specification**

Hand was charged with a course-of-conduct capital specification, to wit, that Jill Hand

32

and Lonnie Welch were killed as part of a course of conduct which involved the killing of two or more people. In his Ninth Ground for Relief, Hand claims the jury instruction did not sufficiently define "course of conduct" which was therefore "an unconstitutionally vague criteria [sic] upon which to determine application of the death penalty." (Motion, Doc. No. 142, PageID 15776.)

Ohio Revised Code § 2929.04(A)(5) provides in relevant part that a person may be executed if the State proves beyond a reasonable doubt that "the offense at bar [aggravated murder] was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender." A specification under § 2929.04(A)(5) was appended to the counts of the indictment charging Hand with the murder of Jill Hand and Lonnie Welch. The trial judge charged the jury on the meaning of the course-of-conduct language and Hand did not object. When this claim was raised on direct appeal, the Ohio Supreme Court found it procedurally defaulted under Ohio's contemporaneous objection rule. *State v. Hand*, 107 Ohio St. 3d 378 ¶ 191 (2006). Judge Beckwith enforced this procedural default against Hand (Order, Doc. No. 118, PageID 2912-13). Hand offers no argument as to why that ruling would be in any way debatable among reasonable jurists and therefore no certificate of appealability should be issued on the Court's procedural default ruling.

Having enforced the contemporaneous objection waiver, the Ohio Supreme Court also ruled there was no plain error. *Id.* ¶¶ 192-98. Judge Beckwith concluded this ruling was neither contrary to nor an unreasonable application of Supreme Court precedent (Order, Doc. No. 118, PageID 2919-20.) In particular, she concluded that the course-of-conduct specification here was much more closely tied to the facts of the case as presented than were the facts in *State v. Scott*, 101 Ohio St. 3d 31 (2004), a case in which the defendant was also denied habeas relief (Order,

Doc. No. 118, PageID 2913-20, adopting the reasoning of  *Scott v. Houk,* 2011 U.S. Dist. LEXIS 133743 (N.D. Ohio Nov. 18, 2011.)

In arguing for a certificate of appealability, Hand cites *Espinosa v. Florida*, 505 U.S. 1079 (1992).  In that case the Supreme Court rejected as unconstitutionally vague a Florida capital specification which permitted execution of a person found to have committed a murder which was "especially wicked, evil, atrocious, or cruel." *Id.* at 1081.

In his dissent in *State v. Scott, supra*, Justice Pfeiffer complained of his colleagues' failure to adopt "an appropriate standard for determining what constitutes a course of conduct involving the purposeful killing of or attempt to kill two or more persons." 101 Ohio St. 3d 31 at 51.  He noted that he had voted to affirm course-of-conduct convictions on a number of occasions and he concurred in affirming Hand's conviction at issue here.  Nevertheless, his opinion on the vagueness of the specification shows that reasonable jurists could disagree on that point and Hand should be granted a certificate of appealability on merits prong of Judge Beckwith's decision on this sub-claim.


**Sub-claim Three[7]:  Improper Instruction on Reasonable Doubt**


In his third sub-claim, Hand complains of the trial court's reasonable doubt instruction in three particulars, to wit, inclusion of the descriptors of "willing to act," "firmly convinced," and "moral evidence."  (Motion, Doc. No. 142, PageID 15780-86.)  The Supreme Court of Ohio summarily rejected this claim on the basis of *stare decisis. State v. Hand*, 107 Ohio St. 3d 378, ¶ 261 (2006).  Judge Beckwith concluded this decision was neither contrary to nor an unreasonable

---

[7] Hand has numbered two of his Ninth Ground sub-claims as "2."  (Motion, Doc. No. 142, PageID 15776, 15780.) The Magistrate Judge here labels the second of those sub-claims as "Three" for clarity of presentation.

application of Supreme Court precedent (Order, Doc. No. 118, PageID 2923, *citing Byrd v. Collins,* 209 F.3d 486 (6th Cir. 2000); *Thomas v. Arn,* 704 F.2d 865 (6th Cir. 1983); *White v. Mitchell*, 431 F.3d 517 (6th Cir. 2005); and *Coleman v. Mitchell*, 268 F.3d 417 (6th Cir. 2001)).

Hand has not shown this conclusion is debatable among reasonable jurists.  He cites only *Victor v. Nebraska*, 511 U.S. 1 (1994), where the Supreme Court approved a reasonable doubt instruction including the moral evidence language which was qualified with "[m]oral evidence, in this sentence, can only mean empirical evidence offered to prove such matters – the proof introduced at trial."  (Quoted at Motion, Doc. No. 142, PageID 15785.)  But it does not follow logically from the Supreme Court's approval of one reasonable doubt instruction that a different instruction under a different State's pattern jury instructions would be disapproved.  A certificate of appealability should be denied on this sub-claim.

**Ground Eleven:  Ineffective Assistance of Appellate Counsel**

In his Eleventh Ground for Relief, Hand contends he received ineffective assistance of appellate counsel in six particulars.  Judge Beckwith denied all six and Hand seeks a certificate of appealability as to each of them (Motion, Doc. No. 142, PageID 15786-92).  The sub-claims will be considered *seriatim*.

**Sub-claim One:  Failure to Preserve Collateral Estoppel Claim**

Hand was awarded $50,000 from the Ohio victims' compensation fund as a result of the murder of Donna Hand.  Trial counsel moved to dismiss the specification to Count Two of the

indictment for complicity in Donna's murder on the grounds of collateral estoppel, since the award required a finding that Hand was not at fault for her death. The trial judge denied the motion and raised a concern that Hand may have committed fraud on the Ohio Court of Claims in obtaining the award. This claim was not raised on direct appeal.

Judge Beckwith found this sub-claim (as well as the next two) procedurally defaulted because it was first raised in Hand's second application to reopen his direct appeal in September 24, 2007, which was rejected by the Ohio Supreme Court because it was untimely (Order, Doc. No. 118, PageID 2926-32). She concluded the Supreme Court's deadline for filing such applications was firmly established and regularly followed and therefore entitled to preclusive effect. *Id.* Hand makes no argument as to why this conclusion by Judge Beckwith would be subject to debate among reasonable jurists (see Motion, Doc. No. 142, PageID 15787-88). Therefore no certificate of appealability should issue as to the procedural default ruling on this sub-claim.

On the merits of this claim, Judge Beckwith found that it was in no way stronger than the issues raised on direct appeal in that Hand had not made the required showing that the issue had been actually litigated before the Court of Claims (Order, Doc. No. 118, PageID 2933). In his Motion, Hand makes no attempt to show that that conclusion would be debatable among reasonable jurists; indeed, he makes no comparison of this claim with other claims raised on direct appeal, but merely reargues the merits of the collateral estoppel claim (Motion, Doc. No. 142, PageID 15787-88). Therefore no certificate of appealability should be issued on the merits conclusion of this sub-claim.

**Sub-claim Two: Failure to Claim Ineffective Assistance of Trial Counsel Based on the Trial Attorney's Failure to Protect the Attorney-Client Communication Privilege with**

**Hand's Bankruptcy Counsel.**

In his second[8] sub-claim on Ground Eleven, Hand claims he received ineffective assistance of appellate counsel when his appellate attorneys failed to claim he had received ineffective assistance of trial counsel when his trial attorney did not protect the privilege for his communications with his bankruptcy attorney. Judge Beckwith found this sub-claim procedurally defaulted on the same basis as sub-claim one and Hand makes no argument to show this conclusion would be debatable among reasonable jurists. He is accordingly not entitled to a certificate of appealability on the procedural default ruling.

On the merits, Judge Beckwith found Hand had waived the privilege by testifying himself about communications with the bankruptcy attorney (Order, Doc. No. 118, PageID 2933 and discussion supra of Ground 4, sub-claim A). Since the underlying claim has no merit, *a fortiori* it is weaker than claims actually raised on appeal. Hand makes no argument to show that this conclusion is debatable among reasonable jurists and should therefore be denied a certificate of appealability on the merits of this sub-claim.

**Sub-claim Three:  Failure to Challenge the Trial Court's Denial of the Motion to Dismiss Specifications Relating to the Murder of Hand's First Two Wives**

In sub-claim three, Hand claims it was ineffective assistance of appellate counsel to fail to challenge the trial court's denial of the motion to dismiss the specifications relating to the murders of Donna and Lori Hand. Judge Beckwith dismissed this sub-claim as procedurally defaulted on the same basis as the first two sub-claims under Ground Eleven (Order, Doc. No. 118, PageID 2932). Hand offers no basis on which reasonable jurists would debate this

---

[8] Hand has made two sub-claims under Ground Eleven which he has numbered "3." The analysis here relates to the first of those, which appears at PageID 15788 and is renumbered "second" for clarity of presentation.

conclusion and he should therefore not receive a certificate of appealability on this procedural default ruling.

On the merits, Judge Beckwith concluded this argument was no stronger than Hand's direct attack on the admission of other acts evidence (Order, Doc. No. 118, PageID 2933-34). Hand essentially concedes this point by re-arguing the Ohio R. Evid. 404(B) claim in his Motion. No certificate of appealability should issue on the merits of this third sub-claim.

**Sub-claim Four:  Failure to Challenge the Sufficiency of the Evidence on the Aggravating Circumstances and Specifications Two through Six of Count Two**

In this sub-claim Hand claims he received ineffective assistance of appellate counsel when his appellate attorney did not challenge the sufficiency of the evidence to prove that he was complicit in the murders of Donna and Lori.[9]  This sub-claim was properly preserved for consideration on the merits, but Judge Beckwith found it was without merit because of the evidence supporting complicity from Welch's statements over the years to his family and friends (Order Doc. No. 118, PageID 2935).

In seeking a certificate of appealability, Hand again claims, as he did on the merits of his Petition, that the evidence against him "rested almost entirely upon jailhouse informants." (Motion, Doc. No. 142, PageID 15791.)  Later in the same paragraph he refers to this informant, Kenneth Grimes, as the "sole witness offered to prove the aggravating circumstance. . . ."  *Id.* Hand offers no reason why, assuming Welch's statements were admissible, they cannot count in the *Jackson v. Virginia* analysis of sufficiency.  *Id.*  No certificate of appealability should issue on this sub-claim.

---

[9] Hand was not charged directly with complicity in the murders of Donna and Lori, but with killing Welch to prevent him testifying about those murders.

**Sub-claim Five:  Failure to Amend the Brief on Appeal to Include Juror Bias Issues**

In this sub-claim, Hand asserts he received ineffective assistance of appellate counsel when his appellate attorneys did not seek to amend their merit brief after they had obtained leave to supplement the appellate record with the juror questionnaires.  Judge Beckwith denied this claim on the merits, noting the separate claim of inadequate voir dire on the same issues (Order, Doc. No. 118, PageID 2935-36).  Hand makes no argument as to why this sub-claim would have been stronger than Ground Four, sub-claim (B).  *A fortiori* he has not shown Judge Beckwith's conclusion that it was not stronger would be debatable among reasonable jurists.  Therefore Hand should be denied a certificate of appealability on this sub-claim.

**Sub-claim Six:  Failure to Appeal the Scope of the Trial Court's Voir Dire on Juror Bias from Pretrial Publicity.**

As with the prior sub-claim, Judge Beckwith found Hand had not shown this claim of ineffective assistance of appellate counsel was stronger than the underlying claims of ineffective assistance of trial counsel or trial court error (Order, Doc. No. 118, PageID 2936).  A certificate of appealability should be denied on this sub-claim on the same basis as sub-claim five.

**Conclusion**

In accordance with the foregoing analysis, Hand should be granted a certificate of appealability on the fair presentation issue in Ground Two; on sub-claim two of Ground Four; on

sub-claims 2, 6, and 7 of Ground Five; on Grounds Six and Eight; and on the merits only of sub-

claim 2 of Ground Nine.  All other requests for a certificate of appealability should be denied.

January 3, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the
proposed findings and recommendations within fourteen days after being served with this Report
and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen
days because this Report is being served by one of the methods of service listed in Fed. R. Civ.
P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected
to and shall be accompanied by a memorandum of law in support of the objections. If the Report
and Recommendations are based in whole or in part upon matters occurring of record at an oral
hearing, the objecting party shall promptly arrange for the transcription of the record, or such
portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the
assigned District Judge otherwise directs. A party may respond to another party's objections
within fourteen days after being served with a copy thereof.  Failure to make objections in
accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638
F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).