# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GERALD HAND, :
                                    Case No. 2:07-cv-846

    Petitioner, :

    -vs- :       District Judge Michael H. Watson
                                      Magistrate Judge Michael R. Merz
                           :
MARC HOUK, Warden,
                           :

    Respondent. :

## REPORT AND RECOMMENDATIONS

This capital habeas corpus case is before the Court on Petitioner Gerald Hand's Motion for Relief from Judgment under Fed.R.Civ.P. 60(b)(6) (ECF No. 182). The Warden opposes the Motion (Memo in Opp., ECF No. 183) and Petitioner has filed a Reply in support (ECF No. 184).

As a post-judgment matter, the Motion is referred for a report and recommended disposition under 28 U.S.C. § 636(b)(3).

Because the Motion attacks the integrity of this Court's judgment, rather than raising a new claim for habeas corpus relief, the Motion is properly addressed in this Court, rather than by transfer to the Sixth Circuit as a second or successive habeas application. *Gonzalez v. Crosby,* 545 U.S. 524, 534-36 (2005).

1

**Litigation History**

Gerald Hand filed this habeas corpus action in 2007 to obtain relief from his conviction and sentence of death. On January 3, 2014, Judge Beckwith dismissed the Petition but granted a certificate of appealability on some grounds (Judgment, ECF No. 148). The United States Court of Appeals for the Sixth Circuit affirmed, *Hand v. Houk*, 871 F.3d 390 (6th Cir. 2017), *cert. denied sub. nom. Hand v. Shoop*, 138 S. Ct. 1593 (2018), and the mandate from the Sixth Circuit issued on October 26, 2017. Since jurisdiction was returned to this Court, Hand has sought authorization for his habeas counsel—specifically, the Office of the Federal Public Defender for the Southern District of Ohio—to appear before and file a motion for relief from judgment in the Delaware County, Ohio Court of Common Pleas (ECF No. 170). The Magistrate Judge has twice recommended that that authorization be denied (ECF Nos. 175, 179) and the motion for authorization remains pending on Petitioner's Objections (ECF Nos. 176, 180). Hand does not presently have a scheduled execution date, but is a Plaintiff in *In re: Ohio Execution Protocol Litig.*, Case No. 2:11-cv-1016.

**The Instant Motion**

In his present Motion, Hand asserts he is entitled to relief from judgment "because the Criminal Justice Section of the Office of the Ohio Attorney General developed an imputed conflict of interest during these proceedings and should have been disqualified from participating in this case." (ECF No. 182, PageID 16423).

The factual basis for the asserted imputed conflict is that attorney Debra Gorrell Wehrle,

2

was Hand's mitigation specialist at his trial in 2003 (Evid. Hrg. Tr., ECF No. 88, PageID 1977). By the time she was deposed in this case on December 9, 2008, and then at the time of the evidentiary hearing in this case in 2010, she was employed by the Ohio Attorney General and working in the Education Section of that Office (Motion, ECF No. 182, PageID 16425, citing Wehrle Dep., ECF No. 58, PageID 1067-68; Evid. Hrg. Tr., ECF No. 88, PageID 1977). By 2012 she was still with the Office of the Attorney General, but working in the Corrections Litigation Unit of the Criminal Justice Section, the same section which includes the Capital Crimes Unit. *Id*. at nn.2-3.

Hand asserts his Motion is timely because his present Trial Attorney, Assistant Federal Public Defender Jacob Cairns, "learned that Ms. [Wehrle] had been employed in the Criminal Justice Section on May 21, 2019, while researching Ms. [Wehrle's] litigation history as an attorney." (ECF No. 182, PageID 16431, n.8.)  As a remedy for this undisclosed imputed disqualification, Hand seeks to:  (1) have the judgment reopened; (2) have the Office of the Ohio Attorney General disqualified from any further participation in this case; and (3) to excuse Hand's previously adjudicated procedural defaults and adjudicate the merits of the defaulted claims. *Id.* at PageID 16432.

The Warden opposes Hand's Motion on the ground it is untimely and Hand has not shown then extraordinary circumstances needed for relief under Fed.R.Civ.P. 60(b)(6).  He also attaches Ms. Wehrle's Affidavit (ECF No. 183-1) which shows that she was admitted to the practice of law in Ohio in 1994. *Id.* at PageID 16440, ¶ 2.  In 2003 she was appointed as mitigation specialist in Mr. Hand's capital murder case. *Id.* at ¶ 3.  On April 30, 2007, she was employed as an Assistant Ohio Attorney General in the Education Section. *Id.* at ¶ 4.  While thus employed, she was called as a witness in the evidentiary hearing in this case on February 10, 2010. *Id.* at ¶ 5.  On June 6,

2010, she transferred to the Corrections Unit of the Ohio Attorney General's Office where she served until transferring again to the Healthcare Fraud Section of that Office on August 20, 2017. *Id.* at ¶ 6.

Ms. Wehrle avers that she has never had any involvement at all in the Ohio Attorney General's representation of Respondent in this case (Wehrle Aff., ECF No. 183-1, PageID 16441, ¶ 7). Recognizing her professional responsibility as an attorney in this regard, she "did not discuss Mr. Hand's case with the assistant attorney general representing the Respondent, . . ." *Id.* She attaches a chart showing organization of the OAG Criminal Justice Section in 2010. PageID 16442. She also attaches pages from the transcript of the evidentiary hearing in which she affirmed, on questioning from the Court, that she understood she was bound by the attorney-client communication privilege "in all realms of my life." (Evid. Hrg. Tr., ECF No. 183-2, PageID 16445).[1]

# Analysis

**General Standard for Relief from Judgment**

Fed.R.Civ.P. 60(b) allows relief from a final judgment on the following bases:

> **(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;

---

[1] The portions of the evidentiary hearing transcript attached by Ms. Wehrle do not include the certificate of the court reporter. Nor in any portion of her affidavit does she attempt to attest to their authenticity. Nonetheless, they appear to be identical to the certified copy of record in this case (Evid. Hrg. Tr., ECF No. 88, PageID 1969, 1995-96).

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed.R.Civ.P. 60(c) provides that Rule 60(b) motions must be made within a reasonable time and sets a one-year jurisdictional bar on motions under 60(b)(1), (2), and (3).

Relief should be granted under Rule 60(b)(6) only in unusual circumstances where principles of equity mandate relief, *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 365 (6th Cir. 1990), and "the trial court's discretion" under 60(b)(6) "is 'especially broad[.]'" *Johnson v. Dellatifa,* 357 F.3d 539, 543 (6th Cir. 2004), quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989); *McDowell v. Dynamics Corp.*, 931 F.2d 380, 383 (6th Cir. 1991). "[R]elief is warranted 'only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of [Rule 60(b)]." *Johnson,* 357 F.3d at 543 (brackets in original, quoting *Hopper*, 867 F.2d at 294. "Furthermore, this provision and other provisions of Rule 60(b) are mutually exclusive; that is, if the reason offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), then relief cannot be granted under Rule 60(b)(6)." *Abdur'Rahman v. Bell (In re Abdur'Rahman)*, 392 F.3d 174, 183 (6th Cir., 2004) (en banc), vacated on other grounds, 545 U.S. 1151 (2005), *citing Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 & n.11 (1988).

**Timeliness of the Motion**

At the time of the evidentiary hearing in this case on February 12, 2010, Petitioner was represented by attorneys Jennifer Kinsley, Jeanne Cors, and Ralph Kohnen (Evid. Hrg. Tr., ECF No. 88, PageID 1969). On October 26, 2017, the Court granted via Notation Order a Motion by Ms. Kinsley "to substitute the Federal Public Defender's Office Capital Habeas Unit as counsel." (Motion, ECF No. 161, PageID 16256). The next day, Carol Ann Wright, an Assistant Federal Defender in that office, entered her appearance as "lead counsel" for Mr. Hand (ECF No. 163). On October 30, 2017, Attorney Jacob Cairns entered his appearance as "lead counsel" and indicated Ms. Wright would remain as co-counsel (ECF No. 164). Although she had indicated she would remain as co-counsel (Motion, ECF No. 161, PageID 16256), Ms. Kinsley's name does not appear in this Notice (ECF No. 164, PageID 16264-65).

Hand's Motion to Appear in state court, filed August 30, 2018, is signed by Mr. Cairns as trial attorney and Ms. Kinsley as co-counsel, as are the Objections to the recommended denial (ECF No. 170, 176, 180). The instant Motion is also signed by Mr. Cairns as trial attorney and bears Ms. Kinsley's name as co-counsel (ECF No. 182, PageID 16423-24). However, Ms. Kinsley's does not appear as co-counsel on the Proposed State Court Motion for Relief from Judgment (ECF No. 170-1).

Thus, one of Hand's lawyers in this case has known for more than nine years—since the above-mentioned deposition testimony in December 2008—that after she was Hand's mitigation specialist, Ms. Wehrle became an Assistant Ohio Attorney General. If her knowledge from appointment as Hand's mitigation specialist is imputed to the Ohio Attorney General's Office,

Hand knew of his asserted grounds for disqualification in late 2008, and a motion to disqualify the Attorney General over nine years later is not made within a reasonable time. The Motion could have been made any time before judgment, but it is now more than five years later. The interest of the State of Ohio in the finality of the judgment in this case weighs strongly in favor of denying the Motion for untimely filing.

Mr. Cairns may argue he did not discover until May 2019 that Ms. Wehrle transferred from the Education Section to the Criminal Section in June 2010. But it is not the Criminal Section alone that Hand seeks to disqualify, but the entire Attorney General's Office (Motion, ECF No. 182, PageID 16432). If Hand's logic is that the impute knowledge disqualifies the entire Attorney General's Office, evidence to support that claim was available to Hand at the time of the evidentiary hearing.

If, on the other hand, Petitioner's argument is only that the disqualifying knowledge is imputed across one "Section" of the Attorney General's Office and he did not learn of Ms. Wehrle's 2010 transfer until 2019, the question must be how diligently he researched the disqualification question in the intervening nine years. Waiting nine years to discover a fact that "is a matter of public record" (Memo. in Opp., ECF No. 183, PageID 16435) (which Hand does not deny), does not bespeak due diligence, and Petitioner offers no indicia of due diligence in his Motion or Reply.

**Extraordinary Circumstances**

Even if the Motion were timely, it would not merit reopening the judgment.

Hand's argument on the merits relies on imputing the knowledge Ms. Wehrle learned as

7

his mitigation specialist to all or some part of the Ohio Attorney General's Office, by whom she became employed after his trial. To begin that chain of logic, Hand asserts the Ohio Rules of Professional Conduct govern the practice of attorneys in this Court (Motion, ECF No. 182, PageID 16426, citing *Schlueter v. Bethesda Healing Ministry, Inc.*, No: 2:17-cv-1055, 2018 WL 6111284, at *1 (S.D. Ohio Nov. 21, 2018). As noted in *Schlueter*, this Court has adopted the Rules of Professional Conduct as adopted by the Supreme Court of Ohio and as amended from time to time. S.D. Ohio Civ.R. 83.3(h).

Hand next argues this Court should follow the decision in *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St. 3d 1 (1998), in applying the Code of Professional Conduct (Motion, ECF No. 182, PageID 16426-27 (citation omitted). The syllabus[2] in *Kala* reads:

> In ruling on a motion for disqualification of either an individual (primary disqualification) or the entire firm (imputed disqualification) when an attorney has left a law firm and joined a firm representing the opposing party, a court must hold an evidentiary hearing and issue findings of fact using a three-part analysis:
>
> (1) Is there a substantial relationship between the matter at issue and the matter of the former firm's prior representation;
>
> (2) If there is a substantial relationship between these matters, is the presumption of shared confidences within the former firm rebutted by evidence that the attorney had no personal contact with or knowledge of the related matter; and
>
> (3) If the attorney did have personal contact with or knowledge of the related matter, did the new law firm erect adequate and timely screens to rebut a presumption of shared confidences with the new firm so as to avoid imputed disqualification?

81 Ohio St. 3d at 1

.

---

[2] The syllabus was the governing portion of Supreme Court of Ohio decisions from 1858 to 2002, when the syllabus rule was abolished.

The disqualification question presented in *Kala* was a matter of first impression for the Supreme Court of Ohio. In resolving it, the court applied the then-governing Ohio Code of Professional Responsibility, since replaced by the Code of Professional Conduct. The court held

> When an attorney leaves his or her former employment and becomes employed by a firm representing an opposing party, a presumption arises that the attorney takes with him or her any confidences gained in the former relationship and shares those confidences with the new firm. This is known as the presumption of shared confidences. Some courts have held that such a change of employment results in an *irrebuttable* presumption of shared confidences that necessitates the disqualification of the attorney (primary disqualification) and the entire new firm (imputed disqualification). *Cardona v. Gen. Motors Corp.* (D.N.J.1996), 942 F.Supp. 968, 969; *G.F. Industries, Inc. v. Am. Brands, Inc.* (1990), 245 N.J.Super. 8, 583 A.2d 765.

81 Ohio St. 3d at 5. Justice Lundberg Stratton noted, *id.*, the opinion of the Sixth Circuit in *Manning v. Waring, Cox, James, Sklar, & Allen*, 849 F.2d 222 (6th Cir. 1988):

> Perhaps these motions have become more numerous simply because the changing nature of the manner in which legal services are delivered may present a greater number of potential conflicts. Certainly, the advent of law firms employing hundreds of lawyers engaging in a plethora of specialties contrasts starkly with the former preponderance of single practitioners and small firms engaging in only a few practice specialties. In addition, lawyers seem to be moving more freely from one association to another, and law firm mergers have become commonplace. At the same time that the potential for conflicts of interest has increased as the result of these phenomena, the availability of competent legal specialists has been concentrated under fewer roofs.
>
> Consequently, these new realities must be at the core of the balancing of interests necessarily undertaken when courts consider motions for vicarious disqualification of counsel.

*Id.* at 224-25.

In *Kala*, the court rejected the rule that a presumption of sharing client confidences with lawyers in a new firm should be irrebuttable. Instead, it held that

> Factors to be considered in deciding whether an effective screen has been created are whether the law firm is sufficiently large and whether the structural divisions of the firm are sufficiently separate so as to minimize contact between the quarantined attorney and the others, the likelihood of contact between the quarantined attorney and the specific attorneys responsible for the current representation, the existence of safeguards or procedures which prevent the quarantined attorney from access to relevant files or other information relevant to the present litigation . . .

81 Ohio St.3d at 10.

The parties have not cited any application of the "firm" concept to a government agency comprising many attorneys with representation duties assigned by statute, divided into units by specialization. Certainly, a principal motive to violate client confidentiality upon switching firms is the temptation of large fees from winning cases, possibly with confidential information from the other side. No such motive exists with the Ohio Attorney General's Office.

Now this Court has been provided with evidence about how firm the boundaries are between units of the Attorney General's Office (See Wehrle Aff., ECF No. 183-1, PageID 16441-42, ¶ 7). Furthermore, in this Court's experience of dealing with that Office through the administrations of many different attorneys general, it appears attorneys do not perform work assigned to different units. For example, in twenty-five years of handling both capital and non-capital habeas corpus cases, the Magistrate Judge has never experienced an attorney from the Capital Habeas Unit appearing in a non-capital habeas case, or vice versa. Under those circumstances, and given Ms. Wehrle's sworn testimony that she has abided by her oath as an attorney, the Magistrate Judge finds any presumption that she has shared Hand's confidential information with anyone in the Capital Habeas Unit to be rebutted.

**The Requested Remedy**

No branch of the requested remedy commends itself to the Magistrate Judge.

The Ohio Attorney General is required by statute to defend judgments of the Ohio courts challenged in habeas corpus.[3] *See, e.g.,*, Ohio Rev. Code § 109.02  Thus, selection of counsel to defend these judgments is not at all like the choice of counsel by a private party.  To disqualify the entire Attorney General's Office would be to deprive all Ohioans of counsel chosen by the General Assembly to litigate these cases.

Moreover, the remedy of excusing Hand's procedural default and deciding his defaulted claims on the merits would not be equitable.  The information on which the Warden relied to litigate the procedural default defense is a matter of public record; there is no way in which Ms. Wehrle's having "switched sides" could possibly have affected the outcome of that defense.

**Conclusion**

Hand's instant Motion for Relief from Judgment is both untimely and without merit and should therefore be denied.  Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to

---

[3] The attorney general shall appear for the state in the trial and argument of all civil and criminal causes in the supreme court in which the state is directly or indirectly interested. When required by the governor or the general assembly, the attorney general shall appear for the state in any court or tribunal in a cause in which the state is a party, or in which the state is directly interested.

Ohio Rev. Code § 109.02.

proceed *in forma pauperis*.

July 1, 2019.

s/ *Michael R. Merz*<br>United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).