# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

GERALD HAND, :

          Petitioner, :

    -vs- :

MARC HOUK, Warden, :

          Respondent. :

Case No. 2:07-cv-846

District Judge Michael H. Watson
Magistrate Judge Michael R. Merz

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

This capital habeas corpus case is before the Magistrate Judge on Petitioner Gerald Hand's Objections (ECF No. 186) to the Magistrate Judge's Report and Recommendations (the "Report," ECF No. 185) recommending that Petitioner's Motion to Set Aside Judgment (ECF No. 182) be denied. Judge Watson has recommitted the matter for reconsideration in light of the Objections (ECF No. 187).

By way of history, the Report noted that Hand's Petition in this case was dismissed January 3, 2014, and that the dismissal had been affirmed. *Hand v. Houk*, 871 F.3d 390 (6th Cir. 2017), *cert. denied sub. nom. Hand v. Shoop*, 138 S. Ct. 1593 (2018). It noted that Hand was a plaintiff in the consolidated § 1983 case challenging Ohio's method of execution (Case No. 2:11-cv-1016) and that he did not presently have an execution date. Hand objects that his execution has been scheduled, citing *State v. Hand*, 2018-Ohio-2418 (June 27, 2018). The citation is accurate, but the

date is not reflected in the ODRC online Execution Schedule[1].

In the Motion, made under Fed.R.Civ.P. 60(b)(6), Hand asserted that he is entitled to have the judgment reopened "because the Criminal Justice Section of the Office of the Ohio Attorney General developed an imputed conflict of interest during these proceedings and should have been disqualified from participating in this case." (ECF No. 182, PageID 16423).

The Report recommends denying the Motion, both because it is untimely and because it is without merit.

**Timeliness of the Motion**

The Report found that Jennifer Kinsley, one of Hand's attorneys, has known since the evidentiary hearing in February 2010 that Debra Gorrell Wehrle, Hand's mitigation specialist at trial, had become by that time an Assistant Ohio Attorney General in the Education Section. Four months after her testimony, she transferred to the Corrections Unit of the Criminal Justice Section where she remained until transferring to the Healthcare Fraud Section in August 2017.

The Report attributed the delay in filing the Motion to Hand's counsel's lack of diligence in investigating Ms. Wehrle's career path. The Objections, however, assert it was caused by the failure of the Attorney General's Office to notify Hand's counsel of Ms. Wehrle's June 2010 transfer. (ECF No. 186). If there had been some duty on the part of the Attorney General to give that notice, failure to give it might excuse the delay. But Hand points to no authority requiring such a notice. In the absence of such a duty, the burden falls on Hand to show why he waited so long to investigate Ms. Wehrle's career path when his counsel knew she was an Assistant Attorney

---

[1] https://drc.ohio.gov/execution-schedule, visited July 17, 2019.

General more than nine years before the Motion was filed and four years before judgment was entered.

**Presumption of Shared Confidences**

In applying the relevant provisions of the Code of Professional Conduct, Hand urged this Court to follow the opinion of the Ohio Supreme Court in *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St. 3d 1 (1998), which held that when an attorney has left a law firm representing one side in a dispute and joined a firm representing the opposing party, a rebuttable presumption arises that the lawyer has improperly shared confidences from the former representation with the new firm.

The Report concluded the presumption had been rebutted by Ms. Wehrle's unequivocal sworn affidavit that she had shared none of Hand's confidences with the Attorney General's Office because she understood her ethical obligation not to do so. Unwilling to accept a fellow attorney's sworn assurances, Hand's counsel object that there is no proof of any "formalized screening mechanism" to keep Ms. Wehrle separate from other Assistant Attorneys General, noting that the Ohio Supreme Court called for such mechanisms in *Kala*. But *Kala*, which in any event is not binding on this Court, does not hold the presumption of shared confidences can be rebutted only by proof of "formalized screening mechanisms." Instead, it held there were a number of factors to be considered in rebutting the presumption. The Report noted the boundaries between areas of specialization in the Attorney General's Office and its own experience of that separation in many years of habeas corpus litigation.

Hand objects further that "[e]ven assuming that the presumption of shared confidences has

3

been rebutted . . .this Court should conclude that the appearance of impropriety in this case is so severe as to require disqualification." (ECF No. 186[2].)  The Magistrate Judge simply does not share that perception of impropriety.  This Court customarily accepts the sworn statements of attorneys who are its officers as to what they have done, especially where, as here, neither Ms. Wehrle nor the Attorney General had any financial motive to invade the confidentiality.

**Remedy:  Disqualify the Entire Attorney General's Office**

In his Motion Hand had asked the Court to disqualify the entire Attorney General's Office from further representation of the Warden in this case.  In his Objections, he backs off that extreme suggestion and is now willing to accept further representation by an "unconflicted section" of that Office (ECF No. 186 at p. 6).  This conception begs the question of how broad the "firm" concept in the Code of Professional Conduct is when applied to a governmental agency.  If "sections" of the Office where Ms. Wehrle has never worked are not presumption of shared confidences, why not "units"?  Ms. Wehrle has never worked in the Capital Crimes Unit which is the "firm" that represents the State in capital habeas corpus cases and in the Execution Protocol litigation.

**Remedy:  Excuse Procedural Defaults**

As part of the remedy for the wrong he asserted, Hand asked that his procedural defaults be excused and the Court adjudicate his defaulted claims on the merits.  The Report rejected that request, concluding "[t]he information on which the Warden relied to litigate the procedural

---

[2] Because of the present infirm condition of the CM/ECF system, the Magistrate Judge is unable to provide a pinpoint citation.

default defense is a matter of public record; there is no way in which Ms. Wehrle's having "switched sides" could possibly have affected the outcome of that defense." (Report, ECF No. 185, page 11).

The Objections do not suggest this conclusion is wrong. Instead they assert the Report cites no authority for a required nexus "between the remedy he is requesting and the imputed conflict . . ." (ECF No. 186, page 7). He goes on to assert this would be an appropriate remedy "to compensate" Hand "for the wrong that has been done to him. . ." That wrong is purely hypothetical, unlike the grievous wrongs for which Hand stands convicted and for which his victims will never be compensated[3].

Hand cites *Bennett v. Collins*, 835 F. Supp. 930 (E.D. Tex. 1993) for the proposition that a court may disallow a procedural default defense as a sanction for noncompliance with court rules and orders. In *Bennett*, the procedural default defense was found to have been forfeited[4] because the State filed a very late response to the habeas petition, despite having been granted two extensions of time and issuance of a contempt show cause order. This ruling is perfectly consistent with the status of procedural default as an affirmative defense which can be forfeited by failing to file a timely return of writ, just as any affirmative defense can be forfeited by failure to raise it in a timely answer to a complaint. That is a very far cry from undoing a judgment which is fifteen years old and has been affirmed in a published opinion.

---

[3] At this point some judges and justices would insert the details of Hand's murder of three of his four wives and his co-conspirator. Those details are unnecessary to decision of the Motion.
[4] The court held the defenses were waived rather than forfeited. The Supreme Court noted the importance of the distinction in *Wood v. Milyard*, 566 U.S. 463 (2012).

**Certificate of Appealability and Appeal *In Forma Pauperis***

The Report recommended that Hand be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would not be in objective good faith and therereo should not be permitted to proceed *in forma pauperis*.

Hand objects that "[r]easonable jurists could find that this situation amounted to extraordinary circumstances warranting relief from judgment" [and] proceeding to the merits of Hand's procedurally defaulted claims would qualify as an appropriate remedy . . ." (ECF No. 186, page 8). This is pure *ipse dixit*. Hand cites no examples of any court which has post hoc disqualified an entire government agency from defending a case because of a completely rebutted presumption of shared confidences. The best proof that a reasonable jurist could find something is to provide an example of a reasonable jurist making such a finding. No examples are offered.

**Conclusion**

Having reconsidered the Motion to Set Aside Judgment in light of Petitioner's Objections, the Magistrate Judge again recommends that the Motion be denied as untimely and without merit. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

July 19, 2019.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).