UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Gerald R. Hand,

    Petitioner,

v.

    Case No. 2:07-cv-846

Marc Houk, Warden,

    Judge Michael H. Watson

    Respondent.

## OPINION AND ORDER

Final judgment dismissing this capital habeas corpus case was entered on February 18, 2014. ECF No. 148. This matter is before the Court upon Petitioner's Motion for Relief from Judgment Under Federal Rule of Civil Procedure 60(b)(6). ECF No. 182. Also before the Court are the following:

- Respondent's Memorandum in Opposition, ECF No. 183;
- Petitioner's Reply, ECF No. 184;
- the Magistrate Judge's Report and Recommendations, ECF No. 185;
- Petitioner's Objections to the Report and Recommendations, ECF No. 186;
- this Court's Recommittal Order, ECF No. 187;
- the Magistrate Judge's Supplemental Report and Recommendations, ECF No. 188;
- Petitioner's Objections to the Supplemental Report and Recommendations, ECF No. 189; and

> Respondent's Memorandum in Response to Petitioner's Objections, ECF No. 190.

## I. BACKGROUND

Petitioner seeks relief from the February 18, 2014 judgment denying habeas corpus relief on the ground that the attorney who had served as his mitigation specialist during trial has worked at the Ohio Attorney General's Office since 2010—first in the Education Section and then in the Criminal Justice Section—thereby creating an imputed conflict of interest. In both a Report and Recommendations dated July 2, 2019, and a Supplemental Report and Recommendations dated July 19, 2019, the Magistrate Judge recommended that Petitioner's motion be denied, primarily as untimely but also as not meriting reopening of the Court's judgment. ECF No. 185, at PageID 16458–63; ECF No. 188, at PageID 16476–78. Petitioner filed objections to both Reports, ECF Nos. 186 and 189, and Respondent filed a response following the Supplemental Report and Recommendations, ECF No. 190.

## II. STANDARD OF REVIEW

A district court reviews *de novo* any part of a Magistrate Judge's Report and Recommendations to which a party properly objects. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

Petitioner seeks relief from the judgment denying habeas corpus relief under Federal Rule of Civil Procedure 60(b)(6). Rule 60(b)(6) is a "catchall"

provision that "vests courts with a deep reservoir of equitable power to vacate judgments 'to achieve substantial justice' in the most 'unusual and extreme situations.'" *Zagorski v. Mays*, 907 F.3d 901, 904 (6th Cir. 2018) (quoting *Stokes v. Williams*, 475 F.3d 732, 735 (6th Cir. 2007)). The Sixth Circuit has made clear that Rule 60(b)(6) "applies only in exceptional or extraordinary circumstances where principles of equity mandate relief." *West v. Carpenter*, 790 F.3d 693, 696–97 (6th Cir. 2015) (citing *McGuire v. Warden, Chillicothe Corr. Inst.*, 738 F.3d 741, 750 (6th Cir. 2013)). In other words, Rule 60(b)(6) is to be used rarely—especially in habeas corpus. *See Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005). Moreover, the public policy favoring finality of judgments even further limits the application of Rule 60(b)(6). *Blue Diamond Coal Co. v. Trustees of UMWA Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Finally, a Rule 60(b) motion must be made within a reasonable time, which is a "fact-specific determination" that requires a court to evaluate the petitioner's diligence in seeking relief. *Miller v. Mays*, 879 F.3d 691, 699 (6th Cir. 2018).

### III. ANALYSIS

The essence of Petitioner's motion is that when the attorney who served as his mitigation specialist during trial, Debra Gorrell Wehrle[1], began working in the Criminal Justice Section of the Ohio Attorney General's Office in 2010, which

---

[1] It appears that at some point after serving as Petitioner's mitigation specialist, Debra Gorrell's legal name changed to Debra Gorrell Wehrle. The Court will refer to her as

Petitioner's counsel only learned of in May of 2019, an imputed conflict of interest was created that the Ohio Attorney General's Office had a duty to disclose to Petitioner. Because the Ohio Attorney General never did so, Petitioner proposes that an appropriate remedy to penalize the Ohio Attorney General for its nondisclosure and to redress Petitioner for the wrong done to him would be for the Court to reopen this case, disqualify the Attorney General's Office from representing the Warden going forward, and address the merits of any claims previously found to be procedurally defaulted.

Upon *de novo* review, this Court does not find Petitioner's objections to be well taken and adopts the Magistrate Judge's recommendation that Petitioner's Motion for Relief from Judgment, ECF No. 182, be denied.

### A. Timeliness

The Magistrate Judge first found Petitioner's motion to be untimely. It is evident from the docket, as well as the Magistrate Judge's Report and Recommendations, that it has been known to everyone, including Petitioner's counsel, at least since the 2010 evidentiary hearing, and possibly as early as a 2008 deposition, that after serving as Petitioner's mitigation specialist Ms. Wehrle went on to become an Assistant Ohio Attorney General in the Education Section. "If her knowledge from appointment as Hand's mitigation specialist is imputed to the Ohio Attorney General's Office," the Magistrate Judge reasoned, "Hand knew

---

Ms. Wehrle, as the Magistrate Judge did.

of his asserted grounds for disqualification in late 2008, and a motion to disqualify the Attorney General over nine years later is not made within a reasonable time." ECF No. 185, at PageID 16458–59. With respect to Petitioner's argument that his habeas counsel did not learn until 2019 that Ms. Wehrle had moved in 2010 from the Education Section to the Criminal Justice Section (albeit in the Corrections Litigation Unit, not the Capital Crimes Unit representing the Warden in these proceedings), the Magistrate Judge found a lack of diligence on the part of habeas counsel by failing to research a fact that was a matter of public record. ECF No. 185, at PageID 16459.

Petitioner objected to the Magistrate Judge's finding on the ground that the delay in this case was attributable not to Petitioner, who had no duty to be diligent, but to the Government's failure to disclose the imputed conflict of interest that was created by Ms. Wehrle's transfer from the Education Section to the Criminal Justice Section. ECF No. 186, at PageID 16467–68. The Magistrate Judge recommended that Petitioner's objection be overruled because Petitioner pointed to no authority creating a duty on the part of the Attorney General to give notice of Ms. Wehrle's transfer from the Education Section to a unit within the Criminal Justice Section separate from the unit representing the Warden in this case. The Magistrate Judge concluded that in the absence of such a duty, the burden was on Petitioner to justify why he waited so long to investigate Ms. Wehrle's career path when Petitioner knew as early as 2010 that she was an

Assistant Attorney General. ECF No. 188, at PageID 16476–77.

Petitioner objects to the Magistrate Judge's finding that the Attorney General's Office had no duty to notify Petitioner of such "a dramatic change" in Ms. Wehrle's employment within the Attorney General's Office. ECF No. 189, at PageID 16483–84. In support, Petitioner cites to *Woolley v. Sweeney*, No. Civ.A.3:01CV1331, 2003 WL 21488411 (N.D. Tex. May 13, 2003), and its citation to the Model Rules of Professional Conduct, for the proposition that there is an affirmative duty on the part of an attorney to notify a former client of potential conflicts of interest. But the Court is not persuaded that such a duty exists under the circumstances in this case.

To be clear, Ms. Wehrle was transferred to the Corrections Litigation Unit within the Criminal Justice Section, not the Capital Crimes Unit representing the Warden in this case. Petitioner makes much of the fact that Ms. Wehrle nonetheless worked on the same floor in the same building as the attorneys working to uphold Petitioner's death sentence, ECF No. 189, at PageID 16487, but that argument falls short of establishing a duty of disclosure for several reasons. First, as the Magistrate Judge observed, there does not appear to be any authority applying the "law firm" concept of a presumption of shared confidences "to a government agency comprising many attorneys with representation duties assigned by statute, divided into units by specialization." ECF No. 185, at PageID 16462. Second, in the Magistrate Judge's (and this

Court's) experience of dealing with the Attorney General's Office through several different administrations, attorneys assigned to one unit within a section do not perform work assigned to a different unit within the same section. ECF No. 185, at PageID 16462. Finally, Ms. Wehrle averred in a sworn affidavit attached to Respondent's opposition to Petitioner's motion, ECF No. 183-1, that she had never had any involvement in the Attorney General's representation of the Warden in this case and that she did not discuss Petitioner's case with the assistant attorney general representing the Warden. ECF No. 185, at PageID 16456. Under these circumstances, the Court is not persuaded that the Ohio Attorney General had a duty to notify Petitioner of Ms. Wehrle's 2010 transfer to the Corrections Litigation Unit of the Criminal Justice Section. And in the absence of such a duty, the Court agrees with the Magistrate Judge that the burden was on Petitioner to justify his delay in investigating Ms. Wehrle's career status when Petitioner knew as early as 2008 that she was an assistant attorney general. For these reasons, the Court agrees with the Magistrate Judge's finding that Petitioner's Rule 60(b)(6) motion was not filed within a reasonable time. Petitioner's objections as to timeliness—ECF No. 186, at PageID 16467–68; ECF No.189, at PageID 16483–84, 16486-87—are **OVERRULED**.

### B. Extraordinary Circumstances

Petitioner's argument on the merits, as aptly framed by the Magistrate Judge, "relies on imputing the knowledge Ms. Wehrle learned as his mitigation

specialist to all or some part of the Ohio Attorney General's Office, by whom she became employed after his trial." ECF No. 185, at PageID 16459–60. To this point, Petitioner and the Magistrate Judge are correct that in the Southern District of Ohio, attorney conduct is governed by the Ohio Rules of Professional Conduct. *See, e.g.,Schlueter v. Bethesda Healing Ministry, Inc.*, Case No. 2:17-cv-1055, 2018 WL 6111284, at *1 (S.D. Ohio Nov. 21, 2018); *Big Idea Co. v. Parent Care Resource, LLC*, Case No. 2:11-cv-1148, 2012 WL 4057216, at *3 (S.D. Ohio Sep. 14, 2012); *Khan v. Cellco P'ship*, Case No. 1:10-cv-118, 2011 WL 5042071, at *2 (S.D. Ohio Sep. 8, 2011). Rules 1.7 through 1.11 address conflicts of interest.

Petitioner asserts that the Court should apply the Ohio Supreme Court decision of *Kala v. Aluminum Smelting & Refining Co., Inc.*, 81 Ohio St. 3d 1 (1998). According to Petitioner, Rule 1.9(c) of the Ohio Rules of Professional Conduct codifies relevant components of *Kala* with respect to imputed conflicts of interest. ECF No. 182, at PageID 16426. *Kala* involved an attorney for a plaintiff in a wrongful termination suit who, after judgment favoring the employer, moved to the law firm representing that employer. Petitioner and the Magistrate Judge both sufficiently explain the three-part test the Ohio Supreme Court laid out in *Kala* for identifying imputed conflicts of interest and, where suitable, rebutting a presumption that the conflicted attorney shared a former client's confidences with the conflicted attorney's new law firm. ECF No. 182, at PageID 16426–27; ECF

No. 185, at PageID 16460–61. As mentioned earlier, the Magistrate Judge noted that neither Petitioner nor Respondent had pointed to any application of the "law firm" concept to a government agency employing many attorneys with duties assigned by statute and divided into units for specialization. ECF No. 185, at PageID 16462. The Magistrate Judge nevertheless applied *Kala* and found that on the basis of the structure of the Ohio Attorney General's Office into units with distinct and separate duties, the Magistrate Judge's experience with the Attorney General's Office through several administrations, and Ms. Wehrle's affidavit stating that she had no involvement with the Capital Crimes Unit and had never discussed Petitioner's case with the assistant attorney general representing the Warden against Hand, any presumption that Ms. Wehrle had shared Petitioner's confidential information with anyone in the Capital Crimes Unit had been rebutted. ECF No. 185, at PageID 16462. Upon *de novo* review, this Court agrees.

Petitioner objected on grounds that the Ohio Rules of Professional Conduct and *Kala* impose a presumption of shared confidences that can only be rebutted by demonstrating that adequate and timely screens between Ms. Wehrle and the attorneys representing the Warden were put in place. Petitioner continued that neither Ms. Wehrle's affidavit nor the structure of the Attorney General's Office establish any such screening. ECF No. 186, at PageID 16468–70. Petitioner also asserted that the presumption of shared confidences applies

to government agencies. In a Supplemental Report, the Magistrate Judge noted that although *Kala* is not binding on this Court, it nonetheless did not hold that the only way to rebut a presumption of shared confidences was with proof of formalized screening mechanisms. ECF No. 188, at PageID 16477. "Instead," according to the Magistrate Judge, "it held there were a number of factors to be considered in rebutting the presumption." *Id*.

Petitioner continues to object to the Magistrate Judge's determination that Ms. Wehrle's affidavit and the structural divisions of the Ohio Attorney General's Office are sufficient to rebut the presumption of shared confidences. ECF No. 189, at PageID 16484–87. To the extent that it is proper to apply *Kala* and to the extent that there is a presumption of shared confidences in this case, the Court agrees with the Magistrate Judge and overrules Petitioner's objections. In addressing the untimeliness of Petitioner's motion, the Court already expressed its view that the structural design of the Ohio Attorney General's Office, this Court's experience that attorneys in that office perform only the duties assigned to their unit, and Ms. Wehrle's affidavit are more than sufficient to rebut any presumption that Ms. Wehrle shared with the assistant attorney general representing the Warden information that she learned in the course of serving as Petitioner's mitigation specialist. But to be clear, this Court finds no evidence to establish that any such sharing occurred or should be presumed.

Furthermore, the Ohio Rules of Professional Conduct—specifically

comment 7 to Rule 1.10 and comment 2 to Rule 1.11—appear to expressly reject imputing former-client conflicts to government lawyers associated with the individually disqualified lawyer. Specifically, Comment 7 to Rule 1.10 provides in relevant part: "Under Rule 1.11(d), where a lawyer represents the government after having served clients in private practice *** former-client conflicts are not imputed to government lawyers associated with the individually disqualified lawyer." Comment 2 to Rule 1.11 echoes this principle, providing in relevant part: "Because of the special problems raised by imputation within a government agency, division (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers."

Petitioner urges the Court to reject that interpretation but offers no authority in support of that position. ECF No. 182, at PageID 16428–29, n.6. As already noted, the Southern District of Ohio has adopted the Ohio Rules of Professional Conduct, and this Court is not free or inclined, absent authority, to reject any part of those rules or comments. The case that Petitioner cites in support of his argument that the presumption of shared confidences should apply to government agencies involved a defense attorney joining the prosecutor's office that prosecuted the lawyer's former client. That is distinguishable from Ms. Wehrle joining a much larger entity such as the Ohio Attorney General's Office.

Notwithstanding Petitioner's argument to the contrary—ECF No. 189, at PageID 16486, n.2–the Court finds that the Ohio Rules of Professional Conduct govern without finding that *Kala* governs or is even persuasive as to the circumstances of this case. Petitioner's objections to the Magistrate Judge's rejection of his imputed conflict and presumption of shared confidences argument are **OVERRULED**.

The Court also rejects and overrules Petitioner's objections—ECF No. 186, at PageID 16469–70 and ECF No. 189, at PageID 16486—that the appearance of impropriety in this case is severe enough that disqualification is required even if the presumption of shared confidences had been rebutted. The factors discussed above belie not only the existence of an imputed conflict of interest and presumption of shared confidences, but also the appearance of a conflict of interest, severe or otherwise. In other words, any questions that may have surrounded the apparent absence of formal screening procedures or "firewalls" were answered with Ms. Wehrle's affidavit stating that she had no involvement in the Capital Crimes Unit of the Criminal Justice Section, that she never discussed Petitioner's case with the Capital Crimes attorneys representing the Warden in this case, and that she understood herself to be bound by professional responsibility rules.

### C. Proposed Remedy

As noted earlier, Petitioner's proposed remedy is for the Court to reopen

this case, disqualify the Ohio Attorney General's Office from representing the warden going forward, and address the merits of claims previously found to be procedurally defaulted. In rejecting these proposed remedies, the Magistrate Judge pointed out that "[t]he Ohio Attorney General is required by statute to defend judgments of the Ohio courts challenged in habeas corpus[,]" and that the remedy of addressing defaulted claims on the merits would not be equitable because the information on which the Warden relied to litigate procedural default was a matter of public record and not gleaned from Ms. Wehrle's having "switched sides." ECF No. 185, at PageID 16463.

Petitioner agreed that there was no need to disqualify the entire Attorney General's Office—only the conflicted Criminal Justice Section. But Petitioner did object that he was required to establish a nexus between the remedy he proposed and the imputed conflict in this case. ECF No. 186, at PageID 16470–71. Petitioner also argued that depriving the Attorney General of its procedural defenses would penalize the Attorney General for nondisclosure of the conflict, deter future misconduct, and redress Petitioner for the harm done to him. *Id.* at PageID 16471.

In his Supplemental Report, the Magistrate Judge rejected Petitioner's suggestion that only the Criminal Justice Section needed to be disqualified. Specifically, the Magistrate Judge reasoned that Ms. Wehrle had never worked in the Capital Crimes Unit that represents the Warden in this case. ECF No. 188, at

PageID 16478. The Magistrate Judge also rejected Petitioner's arguments for why excusing procedural default was warranted, noting that the injury asserted by Petitioner was purely hypothetical, especially in comparison to the wrongs for which Petitioner was convicted and sentenced to death, and that it would be inequitable to undo a fifteen-year-old judgment that has been affirmed in the absence of any nexus between that remedy and the alleged misconduct. *Id.* at PageID 16479.

Petitioner objects, urging this Court to conclude that the presumption of shared confidences applies to the entire Criminal Justice Section, not just the Capital Crimes Unit within that section, because Ms. Wehrle worked on the same floor in the same building and because there is no indication that attorneys within one unit were prohibited from discussing their cases with attorneys in another unit. ECF No. 189, at PageID 16486–87. Petitioner also reiterates his argument that addressing the merits of claims previously found to be defaulted is warranted as a means to penalize the Attorney General for its nondisclosure, deter future lapses, and compensate Petitioner for the wrong done to him. Petitioner disagrees with the Magistrate Judge's characterization of that harm as "hypothetical," and argues that the nondiscloure deprived Petitioner of the ability to ensure that Ms. Wehrle was sufficiently walled off from discussing Petitioner's case with the attorneys representing the Warden. *Id.* at PageID 16487–88.

The Court overrules these objections. As a preliminary matter, this Court

finds nothing improper in requiring a movant to establish a nexus between the misconduct alleged and the remedy sought when the remedy the movant seeks is equitable and would require an extraordinary exercise of discretion on the part of the Court. To that point, the Court can see no connection between the "failure" of the Attorney General to disclose Ms. Wehrle's transfer to the Criminal Justice Section and the Attorney General's litigation of procedural default in this case. Even if Petitioner had managed to establish some sort of a nexus, the Court has already determined that there was no misconduct on the part of the Attorney General's Office requiring punishment and no wrong done to Petitioner requiring redress. Petitioner's objections to the Magistrate Judge's rejection of Petitioner's proposed remedy are **OVERRULED**.[2]

### D. Certificate of Appealability

Finally, Petitioner objected to the Magistrate Judge's recommendation that Petitioner be denied a certificate of appealability and permission to proceed *in forma pauperis*. ECF No. 186, at PageID 16471–7. In response to that objection, the Magistrate Judge noted in his Supplemental Report that the best proof that reasonable jurists could find an issue debatable would be an example of jurists making such a finding, and that Petitioner had offered no such examples. ECF No. 188, at PageID 16480. In his objection, Petitioner reiterates

---

[2] Petitioner also takes issue with the Magistrate Judge's comparison between the harm that Petitioner suffered and the wrongs for which Petitioner was convicted—ECF No.

that jurists of reason could disagree with the Magistrate Judge's determination that Petitioner's motion is both untimely and without merit, and also argues that "[t]he fact that the issue [Petitioner] has raised is novel doesn't mean that it is so utterly lacking in merit that no reasonable jurist could find it meritorious." ECF No. 189, at PageID 16489. The Court is not persuaded.

An appeal from the denial of a habeas corpus action may not proceed unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). To warrant a certificate of appealability, a petitioner must make a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see also Barefoot v. Estelle, 463 U.S. 880, 893 (1983); Lyons v. Ohio Adult Parole Authority, 105 F.3d 1063, 1073 (6th Cir. 1997). The petitioner need not demonstrate that the claim will prevail on the merits; the petitioner need only demonstrate that the issues he or she seeks to appeal are deserving of further proceedings or are debatable among jurists of reason. Barefoot, 463 U.S. at 893 n.4. The Supreme Court has explained that, "[where a district court has rejected the constitutional claims on the merits, the showing required to satisfy 28 U.S.C. § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDonnell, 529 U.S. 473, 484 (2000).

---

189, at PageID 16487-88. It does not appear to the Court, however, that the Magistrate Judge's observation was dispositive.

The Court has agreed with the Magistrate Judge that Petitioner's motion is untimely, in view of Petitioner's knowledge as early as 2008 that Ms. Wehrle was as Assistant Attorney General and Petitioner's corresponding failure to investigate Ms. Wehrle's status in that office. The Court has also found no actual conflict of interest, no imputed conflict of interest, and no appearance of a conflict of interest so severe that disqualification is required—much less a conflict so extraordinary that equity mandates relief. Against this backdrop, the Court cannot find that reasonable jurists would find these determinations debatable or wrong, or that Petitioner's arguments otherwise warrant any further consideration.

## IV. CONCLUSION

For these reasons, the Court **OVERRULES** Petitioner's Objections, ECF Nos. 186 and 189; **ADOPTS** the Report and Recommendations, ECF No. 185; and **ADOPTS** the Supplemental Report and Recommendations, ECF No. 188. Petitioner's Motion for Relief from Judgment, ECF No. 182, is **DENIED**.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**